J-S37013-19

2019 PA Super 306

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                                     :
          v.                          :
                                     :
                                     :
CHARLES K. DIGGS             :
                                     :
          Appellant           :    No. 1000 EDA 2018

Appeal from the PCRA Order March 12, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0720791-1974

BEFORE: BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                       **FILED OCTOBER 11, 2019**

Charles K. Diggs appeals from the order denying his petition filed

pursuant to the Post Conviction Relief Act ("PCRA"). Upon review, we affirm.

We previously summarized the relevant factual history of this case as

follows:

> On February 12, 1974, eighteen-year-old Linda DeBose was
> brutally stabbed to death in the basement of her home on Medary
> Avenue in Philadelphia. When Linda's mother, Alice DeBose,
> returned home from work at approximately 11:20 pm on the
> evening of February 12[th], she found her daughter lying in a pool
> of blood. She immediately called the police who arrived shortly
> thereafter.[1] Linda DeBose was rushed to Albert Einstein Medical
> Center where she later died. Prior to her death, however, Linda
> was able to identify her attackers by name to both her mother and
> the police.

---

[1] Trial testimony revealed that Linda DeBose was stabbed
approximately sixty-nine times in the throat, arms, and upper
body, and she was left to die.

Within three hours of the murder, the Philadelphia police arrested Appellant's co-conspirator, Louis Riggins. Appellant was arrested two years later in Chester, Pennsylvania, where he had been hiding under several assumed names. Subsequent to his arrest, Appellant was released on bail but again fled and eluded authorities for an additional two years. He was arrested again in Philadelphia on May 17, 1976.

*Commonwealth v. Diggs*, 570 EDA 2002 (Pa.Super. October 10, 2003) (unpublished memorandum at 1-2) ("Diggs I").

In 1977, Appellant proceeded to a jury trial. The jury convicted Appellant of first-degree murder, criminal conspiracy, possession of an instrument of crime, and prohibited weapons. In 1991, federal *habeas corpus* relief was granted after it was determined that a prosecutor had systematically excluded black venire persons from Appellant's jury, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

A second jury trial was held in 1991, at which Ricardo Kelsey testified that Appellant had confessed to participating in the murder while they were incarcerated together.[1] Appellant was convicted of the same crimes and sentenced to life imprisonment. On direct appeal, this Court affirmed the judgment of sentence and the Supreme Court denied allowance of appeal. *Commonwealth v. Diggs*, 685 A.2d 1041 (Pa.Super. 1996) (unpublished memorandum), *appeal denied*, 698 A.2d 592 (Pa. 1997). The United States Supreme Court denied *certiorari* on February 23, 1998. *Diggs v. Pennsylvania*, 522 U.S. 1123 (1998).

_____

[1] The trial court granted a protective order with regard to Kelsey because Appellant threatened to kill Kelsey if he testified at Appellant's trial. PCRA Court Opinion, 3/25/02, at 21.

- 2 -

Appellant filed a timely *pro se* PCRA petition, and counsel was appointed. Multiple assignments, withdrawals of counsel, and amended PCRA petitions followed. On January 8, 2002, the PCRA court dismissed Appellant's PCRA petition without a hearing, finding that all of his claims lacked merit. On appeal, we addressed Appellant's newly-discovered evidence claim regarding the PCRA court's failure to grant a hearing concerning the affidavits of Charles Giles and Timothy VanHook. Appellant asserted that the affidavits indicated that Ricardo Kelsey had lied at trial about Appellant's involvement in the murder. Appellant's appeal was unsuccessful as we agreed with the PCRA court that neither affidavit specifically asserted that Kelsey lied. When affirming the trial court's dismissal order, we also pointed out "that noticeably absent is an affidavit from Kelsey indicating that he lied at trial." *Diggs I*, *supra*, (unpublished memorandum at 7).

Appellant filed a petition for reconsideration, which we denied, and a petition for allowance of appeal to the Supreme Court, which was granted. The Supreme Court remanded the case to our Court with directions to address the other thirteen issues raised by Appellant that we had found waived. Our subsequent memorandum addressed the additional issues, and reaffirmed our previous decision regarding Appellant's newly-discovered evidence claim. *Commonwealth v. Diggs*, 876 A.2d 461 (Pa.Super. 2005) ("Diggs II").

On August 21, 2012, Appellant filed his second PCRA petition, alleging that *Miller v. Alabama*, 567 U.S. 460 (2012), applied to him. In 2015, Kelly Adams, Esquire entered her appearance on behalf of Appellant. On January

- 3 -

22, 2016, Appellant filed a *pro se* supplemental PCRA petition "putting the court on notice" that he was gathering funds to investigate the blood, DNA, and medical evidence which he thought would show that the victim's dying declaration never occurred.

On September 7, 2016, counsel filed an amended petition alleging that Appellant had uncovered notes of the medical examiner that contradicted the victim's dying declaration and that were withheld from the defense in violation of **Brady v. Maryland**, 373 U.S. 83 (1963).  The Commonwealth argued that the petition should be dismissed as untimely because Appellant had failed to plead a specific exception to the PCRA time bar.  **See** Commonwealth's Motion to Dismiss, 11/8/16, at 1.  In response, Appellant issued a "Corrected Amended Petition," explaining that he had uncovered a new fact, which was that the victim made her dying declaration at the hospital, rather than at home like the victim's mother had testified at trial.  Also, Appellant claimed that he could not have known these facts sooner since the Commonwealth withheld the relevant portions of the medical examiner records from discovery in violation of **Brady**.

On January 15, 2017, Appellant filed a petition requesting permission to add a new claim to his PCRA petition.  In the supplement, Appellant alleged an additional claim of after-discovered evidence in the form of a witness recantation.  Specifically, Appellant said that Timothy VanHook had made contact with Appellant in prison on November 19, 2016.  VanHook told Appellant that Ricardo Kelsey had admitted to lying about Appellant's

- 4 -

involvement in the murder. VanHook was one of the newly-discovered witnesses in Appellant's original PCRA petition filed ten years before, wherein he also alleged that Ricardo Kelsey had lied at trial. Appellant requested more time to investigate this new evidence. Appellant filed additional supplements, attaching affidavits by inmates Timothy VanHook, Charles Giles, and William Broxton, all who stated that Ricardo Kelsey admitted to them that he lied during his trial testimony in this case.

On April 10, 2017, Appellant filed another petition seeking to add a new claim to his Amended PCRA petition. Therein, Appellant asserted that after meeting with Appellant's private investigator on January 28, 2017, Kelsey had agreed to come forward to admit that he lied when he testified against Appellant. In March of 2017, Kelsey met with Appellant's investigator and signed an affidavit to that effect, which was filed on May 14, 2017. The Commonwealth responded with a supplemental motion to dismiss, indicating that it wanted a hearing, because it had obtained a competing affidavit from Kelsey wherein he reaffirmed the validity of his trial testimony. The Commonwealth emphasized that despite its request for a hearing, it was not conceding timeliness on either of Appellant's issues.

On November 8 and 27, 2017, the PCRA court held evidentiary hearings on both of the after-discovered evidence claims.[2] Appellant testified on his

---

[2] A review of the record reveals that there may have been additional dates that this PCRA hearing was also held. However, no other transcripts have been provided to this Court.

own behalf and presented the testimony of his trial attorney, private investigator, and three fellow inmates. Ricardo Kelsey testified that he never recanted his trial testimony, but signed an affidavit generated by Appellant's investigator, which he did not read, after being repeatedly pursued by the defense. The Commonwealth put forth the testimony of the assistant supervisor of the Philadelphia District Attorney's Office, who explained the office's discovery procedures. Post-hearing briefs were filed and the PCRA court dismissed Appellant's petition on March 9, 2018. This appeal followed. Both Appellant and the PCRA court complied with the mandates of Pa.R.A.P. 1925, and thus, this petition is properly before us.

Appellant raises the following issues for our review:

I.      Whether the PCRA court erred when it failed to consider all of the facts set forth in the trial transcript before denying the claim that the petitioner was prejudiced from the suppression of evidence material to the defense.

II.     Whether the PCRA court erred when it did not grant a new trial based on the incredible testimony of the jailhouse informant.

Appellant's brief at 2.

We begin with the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." ***Commonwealth v. Rykard***, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have

- 6 -

no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Id*.

Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment [of sentence] becomes final[.]" 42 Pa.C.S. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017).

The time bar can "only be overcome by satisfaction of one of the three statutory exceptions codified at 42 Pa.C.S. § 9545(b)(1)(i)–(iii)." *Id*. The three narrow exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly-discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231, 233-34 (Pa.Super. 2012). Additionally, a PCRA petitioner must present his claimed exception within sixty

days of the date the claim first could have been presented.[3]  42 Pa.C.S. § 9545(b)(2).

The timeliness exception set forth at § 9545(b)(1)(ii) has two components, which must be alleged and proven as an initial jurisdictional threshold.  ***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa.Super. 2015). Namely, the petitioner must establish that: (1) the facts upon which the claim was predicated were unknown; and (2) they could not have been ascertained by the exercise of due diligence.  ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1272 (Pa. 2007).  Due diligence demands that the petitioner take reasonable steps to protect his own interests and explain why he could not have learned the new facts earlier with the exercise of due diligence. ***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa.Super. 2010).

Once it is established that the PCRA court has jurisdiction over the claim, the petitioner can present a substantive after-discovered evidence claim.  ***See*** 42 Pa.C.S. § 9543(a)(2)(vi).  In order to obtain relief on a substantive after-discovered evidence claim, a petitioner must demonstrate that:  (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not

_____

[3] As of December 24, 2018, 42 Pa.C.S. § 9545(b)(2) was amended to provide that any PCRA petition invoking a timeliness exception must be filed within one year of the date the claim first could have been presented.  However, this amendment does not apply to Appellant's case, which arose before the effective date of the amendment.

cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **_Commonwealth v. Washington_**, 927 A.2d 586 (Pa. 2007). The substantive merits-based analysis is more demanding that the analysis required by the "new facts" exception to establish jurisdiction. **_See Bennett_**, **_supra_** at 395-96.

In his first claim, Appellant challenges the PCRA court's review of the record when it dismissed his allegation of after-discovered evidence regarding newly-discovered medical examiner records. The PCRA court held a hearing on this issue, before concluding that the documents did not constitute after-discovered evidence as Appellant had not shown due diligence or prejudice. PCRA Court Opinion, 7/17/18, at 9-11.

Despite the PCRA court's failure to do so, we must discern whether we have jurisdiction before proceeding to an analysis of the merits of Appellant's after-discovered evidence claim. Although facially untimely, Appellant pled a newly-discovered fact exception in order to overcome the PCRA time bar. **_See_** Corrected Amended Petition, 12/8/16, at ¶ 34; Response to Commonwealth's Motion to Dismiss, 2/8/17. In those filings, Appellant alleged that the medical examiner records could not have been obtained sooner because he had no reason to think that he did not have everything from that office already. **_Id_**. The Commonwealth disagrees with Appellant's circular reasoning, arguing that if Appellant thought he had a complete report from the medical examiner's

office, he would have had no reason to subpoena it. Commonwealth's Supplemental Motion to Dismiss, 7/31/17, at 6.

A review of the PCRA hearing transcripts reveals that Appellant's allegation that he had no reason to think that there were any documents outstanding from the medical examiner's office is disingenuous, as the existence of these documents was known to trial counsel at the time of trial. Specifically, Appellant's trial counsel testified that he was aware that such documents existed at the time of Appellant's trial and that he did not request them because he "didn't think there would be an issue pertaining to it." N.T. PCRA Hearing, 11/8/17, at 15-18.

Also, reasonable investigation could have uncovered the outstanding medical records many years sooner. As the PCRA court concluded, given that trial counsel was aware of the existence of these documents, and PCRA counsel obtained them by directing a subpoena to the medical examiner's office, "trial counsel had the ability to subpoena the aforementioned documents from the Office of the Medical Examiner prior to trial, but did not." PCRA Court Opinion, 7/17/18, at 11. Appellant has shown us nothing that counters the veracity of that finding. More importantly, Appellant offers no explanation as to why he could not have discovered the documents years earlier simply by serving the subpoena he waited until 2016 to pursue. Therefore, since we can affirm on any basis supported by the record, we find

that Appellant has failed to meet the newly-discovered fact exception to the time-bar, and thus his petition is not timely filed.[4]

Next, Appellant argues that the PCRA court erred when it did not grant him a new trial because Ricardo Kelsey lied when he testified that Appellant had confessed his involvement in the murder. Appellant's brief at 11. Again, the PCRA court failed to conduct a jurisdictional timeliness analysis, before proceeding substantively. However, in its analysis of the first issue, the PCRA court implicitly found that the newly-discovered fact requirements necessary to establish jurisdiction were met here, when it made a credibility determination regarding the Ricardo Kelsey affidavit and testimony. The parties do not dispute this jurisdictional finding. From our review of the record, we conclude that Appellant timely pled his newly-discovered fact of Ricardo Kelsey's alleged recantation for purposes of the timeliness exception in 42 Pa.C.S. § 9542(b)(1)(ii) and the PCRA court had jurisdiction to reach the merits.

---

[4] Even if Appellant had met the time bar requirements, he would not be entitled to relief on his substantive claim. Appellant challenges the PCRA court's review of the record, specifically the 1991 trial transcript. However, he has failed to ensure that the trial transcripts were part of the record for our review. Without that transcript, we would be unable to consider his claim and would be forced to find it to be waived. **See Commonwealth v. Houck**, 102 A.3d 443, 456 (Pa.Super. 2014) (providing waiver under Rule 1911 appropriate where issues "cannot be resolved in the absence of necessary transcript.").

The PCRA court found the affidavit to be "wholly lacking in credibility" when balanced against Kelsey's testimony at the evidentiary hearing. PCRA Court Opinion, 7/17/18, at 6. We agree. In the 1990s, Ricardo Kelsey contacted the police and told them that Appellant had confessed to him his involvement in the murder of the victim. N.T. PCRA Hearing, 11/8/17, at 66. After the court issued a protective order, Kelsey testified against Appellant at the 1991 trial. *Id*. at 76-77. In his first PCRA petition, Appellant litigated a claim that Kelsey lied based on other inmates' interactions with Kelsey. That claim was dismissed, in part because Kelsey never indicated that he wished to recant his trial testimony. At the PCRA hearing, Appellant's private investigator detailed the lengths he went to obtain Kelsey's cooperation, admitting to making "a half dozen calls" to Kelsey before he finally agreed to make a statement. N.T. PCRA Hearing, 11/27/17, at 19. Kelsey testified that he signed the affidavit at the insistence of the investigator and never said anything that was in it, because his original statement and trial testimony was true. N.T. PCRA Hearing, 11/8/17, at 66-78.

Viewing the affidavit in the context of the larger record, where Kelsey has been consistent in his testimony despite repeated pressure from others on Appellant's behalf, the PCRA court credited Kelsey's PCRA hearing testimony. PCRA Court Opinion, 7/17/18, at 6. The certified record supports the PCRA court's findings. Thus, we discern no abuse of discretion in the PCRA

court's denial of this claim for relief.  Accordingly, we affirm the PCRA court's order dismissing the PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/11/19</u>