J. S14036/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                           :          PENNSYLVANIA
                             v.                           :
                                                           :
RONALD JOHNSON,                        :          No. 437 EDA 2019
                                                           :
                    Appellant             :


Appeal from the PCRA Order Entered January 18, 2019,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0523271-1980


BEFORE:  BOWES, J., KING, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          Filed: September 17, 2020

Ronald Johnson appeals from the January 18, 2019 order entered by the Court of Common Pleas of Philadelphia County dismissing appellant's second petition for relief pursuant to the Post Conviction Relief Act ("PCRA")[1] without a hearing.  After careful review, we affirm.

A previous panel of this court set forth the following factual history:

> On July 12, 1979, shortly after midnight, Gloria Oree, a man known only as Jibreel, Donald Colefield and Bruce Porter were in the basement of Loretta Turner's home at 1232 West College Avenue in Philadelphia. Ms. Turner's eight-year-old daughter, [K.], was sleeping on the second floor.
>
> Immediately after Jibreel left to purchase cigarettes, appellant, Galin Tate, Anthony Murray and a fourth man knocked on the front door.  Porter opened the door, and the men abruptly entered with Tate wielding

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

a single-barrel shotgun and Murray brandishing a double-barrel shotgun. Appellant and the fourth man were unarmed at that moment.

Colefield walked to the first floor upon hearing the intruders. As he arrived, Colefield was ordered by Murray to face the wall and submit to a search. Murray and appellant searched Colefield for valuables while Porter argued with Tate. Shortly thereafter, Murray searched the second floor while appellant and Tate detained Colefield and Porter.

When Murray returned to the first floor, having uncovered nothing of value, Tate inquired of Colefield where the amphetamine and money were kept. Realizing that Ms. Oree possessed cash, Colefield directed them to the basement. Murray retrieved $200.00 in cash from a table without knowing that Oree was hiding behind the furnace.

As Murray emerged from the basement, he continued out the front door with appellant and the fourth man. Tate remained behind to caution Porter not to obstruct their future visits. Porter reluctantly pledged his cooperation, making it apparent that he had no choice while Tate was armed with a deadly weapon. Tate departed. Apparently piqued by Porter's earlier resistance, Tate returned within 8 seconds and fired the single-barrel shotgun into Porter's midriff. Porter died shortly thereafter.

*Commonwealth v. Johnson*, 485 A.2d 397, 400-401 (Pa.Super. 1984)

(footnote omitted).

On November 2, 1980, a jury found [appellant] guilty of second degree murder, robbery and conspiracy. [Appellant] was sentenced to life in prison without the possibility of parole. [Appellant] appealed; the Superior Court affirmed his sentence on October 26, 1984. [*See id.*] The Pennsylvania Supreme Court denied *allocatur* on October 6, 1985. [Appellant] filed his first PCRA petition on May 14, 1993, which was dismissed on January 31, 1997. The Superior

Court affirmed this dismissal on March 25, 1998. [**Commonwealth v. Johnson**, 715 A.2d 503 (Pa.Super. 1998) (unpublished memorandum).] On August 5, 1998, the Pennsylvania Supreme Court once again denied **allocatur**. [**Commonwealth v. Johnson**, 727 A.2d 128 (Pa. 1998).]

On August 22, 2012, [appellant] filed a second **pro se** PCRA petition, claiming relief under **Miller v. Alabama**[, 567 U.S. 460 (2012)]. On October 15, 2014, [appellant] filed a **pro se** amended PCRA petition, claiming newly discovered evidence. Specifically, he claimed that his sister Sharon Moore and his uncle John Leslie were at a neighborhood reunion block party and they chatted with some of [appellant's] old friends. These friends told them to talk to Dwight Boseman ([a.k.a] "J.J.") because he allegedly had information about [appellant's] case. Leslie contacted Boseman, who claimed that he remembered the crime taking place, that he happened to be outside of the house in Freddy Tomlin's car with Bruce Ward, a.k.a. Bruce Earl, and Freddy when it occurred, and that he did not see [appellant] run out of the house with the other suspects after the shooting. Boseman claimed that he did not go to the police with this information because Ward spoke with police and he assumed that Ward told the police what he saw so that there was no need to get involved.

On December 3, 2015, [appellant's] PCRA counsel, Regina M. Oberholzer, Esquire filed an amended petition, withdrawing [appellant's] **Miller** claim and reiterating [appellant's] claim of newly discovered evidence. She argued that [appellant's] petition should be considered timely due to previously unknown facts (Boseman's affidavit) as well as governmental interference. With respect to governmental interference, Ms. Oberholzer argued that the Commonwealth had Bruce Ward on its list of potential witnesses for the trial of one of [appellant's] co-conspirators but that this alleged "exculpatory" information was never turned over to [appellant's] counsel. Subsequently, Todd Mosser, Esquire entered

> his appearance and adopted Ms. Olberholzer's amended petition.
>
> On June 18, 2018, the Commonwealth filed a letter in brief, arguing that [appellant's] PCRA petition should be dismissed as untimely without exception and that his claims were without merit. On August 29, 2018, Mr. Mosser filed a response in opposition to the Commonwealth's letter brief. On December 10, 2018, [the PCRA court] sent [appellant] a notice of intent to dismiss pursuant to [Pa.R.Crim.P.] 907, indicating that his petition was untimely and without merit. On January 18, 2019, [the PCRA court] dismissed [appellant's] petition. On February 8, 2019, [appellant] filed a notice of appeal to [the] Superior Court.

PCRA court opinion, 6/3/19 at 2-4 (extraneous capitalization omitted).

The PCRA court did not order appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

> 1. Did the PCRA Court err by dismissing Appellant's petition without evidentiary hearing where he adequately pled two exceptions to the PCRA's time-bar?
>
> 2. Did the PCRA Court err by dismissing Appellant's petition without evidentiary hearing where he adequately pled a **Brady**[2] violation?
>
> 3. Did the PCRA Court err by dismissing Appellant's petition without evidentiary hearing where he adequately pled that he is entitled to a new trial as the result of newly discovered evidence?

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

Appellant's brief at 2.

The PCRA requires that any petition for collateral relief be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Commonwealth v. Callahan*, 101 A.3d 118, 122 (Pa.Super. 2014), quoting 42 Pa.C.S.A. § 9545(b)(3).

Here, appellant's judgment of sentence became final on January 4, 1986, following the conclusion of the period in which appellant could have filed a petition for a writ of *certiorari* with the Supreme Court of the United States. *See* U.S. Sup. Ct. R. 13. Appellant filed the instant PCRA petition on August 22, 2012 – over 26 years after his judgment of sentence became final and over 25 years after a PCRA petition could be considered timely. *See* 42 Pa.C.S.A. § 9545(b)(1). Accordingly, appellant's petition is facially untimely.

A petitioner may only file a PCRA petition beyond one year of the date the judgment of sentence becomes final if:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not

> have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

> "[T]he time limitations pursuant to . . . the PCRA are jurisdictional." **Commonwealth v. Fahy**, [] 737 A.2d 214, 222 ([Pa.] 1999). "[Jurisdictional time] limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits." **Id.** "If the petition is determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition." **Commonwealth v. Perrin**, 947 A.2d 1284, 1285 (Pa.Super. 2008).

**Commonwealth v. Jackson**, 30 A.3d 516, 519 (Pa.Super. 2011), **appeal denied**, 47 A.3d 845 (Pa. 2012). In cases in which a petitioner is claiming an exception to the PCRA time-bar, the petition must be filed within 60 days of the date the claim could have been presented.[3] 42 Pa.C.S.A. § 9545(b)(2).

We begin with our well-settled standard of review for the denial of PCRA relief.

---

[3] We note that the General Assembly amended Section 9545(b)(2) to require PCRA petitioners invoking an exception to the time-bar to file a petition within one year of the date the claim could have been presented. **See** Act 2018, Oct. 24, P.L. 894, No. 146, § 2, effective Dec. 24, 2018. The amendment, however, only applied to claims arising after December 24, 2017. Accordingly, the amendment does not apply to the instant case.

> "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Hanible*, [] 30 A.3d 426, 438 ([Pa.] 2011) (citing *Commonwealth v. Colavita*, [] 993 A.2d 874, 886 ([Pa.] 2010)).  We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party.  *Id.* With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.  *See Commonwealth v. Reid*, [] 99 A.3d 470, 485 ([Pa.] 2014).  "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions."  *Commonwealth v. Roney*, [] 79 A.3d 595, 603 ([Pa.] 2013).  The denial of an appellant's request for discovery is reviewed for abuse of discretion.  *Id.*

*Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015).

In the instant case, appellant avers to have met two exceptions to the PCRA time-bar:  governmental interference and newly discovered evidence.  (Appellant's brief at 7.)  In order to raise a governmental interference claim in the context of a facially untimely PCRA, a petitioner is,

> required to plead and prove that his "failure to raise the claim [or claims] *previously* was the result of interference by government officials with the presentation of the claim [or claims] in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States . . . ." 42 Pa.C.S.[A.] § 9545(b)(1)(i) (emphasis added).

*Commonwealth v. Chester*, 895 A.2d 520, 523 (Pa. 2006).

Here, appellant contends that he discovered that Ward was identified as a potential witness in Murray's trial. (Appellant's brief at 10.) Appellant further argues that "[d]espite [] Murray and [a]ppellant being tried for the same offense, [] Ward was not identified in [a]ppellant's discovery or at trial as a potential witness." (*Id.*) Appellant claims that this evidence,

> if true, would show that [] Ward did go to law enforcement and provide some information regarding the robbery and shooting, and that this information was in the Commonwealth's possession at the time of [] Murray's trial but not disclosed to [a]ppellant.

*Id.* at 10-11.

In its opinion, the PCRA court concluded the following:

> [Appellant] provides no proof whatsoever that Ward ever spoke to police, that he actually testified at [Murray's] trial, or that his recollection of the events matched Boseman's. The only evidence [appellant] submits, besides Boseman's affidavit and his own conjecture, is the first few pages of notes of testimony from [Murray's] trial that lists Bruce Ward as a possible witness. There is no evidence that Ward actually testified, and if he did in fact testify, there is no evidence as to what he said on the stand. Moreover, there is no evidence that law enforcement or the Commonwealth knew about Boseman allegedly observing the suspects fleeing the shooting. [Appellant] did not submit an affidavit or police statement from Ward showing that Ward's version of events would corroborate Boseman's affidavit. The only "proof" that [appellant] has offered to show that law enforcement even knew that Boseman existed is his own speculation that Ward told police that Boseman was with him in the car on the day in question. This is insufficient to prove that the Commonwealth knew about Boseman's alleged connection to the case and intentionally withheld potentially exculpatory evidence from [appellant].

PCRA court opinion, 6/3/19 at 7.

Based on our review of the record, we find that the PCRA court did not abuse its discretion when it denied appellant's request for an evidentiary hearing. We further find that the PCRA court's legal conclusion that appellant failed to meet his burden in establishing a claim of government interference is free of legal error. Accordingly, appellant's government interference issue is without merit.

We next turn to appellant's newly discovered evidence claim. Here, appellant contends that he was unaware that Boseman, Ward, or Tomlin were outside the residence at the time of the shooting and that appellant could not have "ascertained the proffered information earlier by exercise of diligence, as he did not know of the existence of these witnesses." (Appellant's brief at 12.)

> The [newly discovered evidence] exception [to the PCRA time bar] set forth at § 9545(b)(1)(ii) has two components, which must be alleged and proven as an initial jurisdictional threshold. **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa.Super. 2015). Namely, the petitioner must establish that: (1) the facts upon which the claim was predicated were unknown; and (2) they could not have been ascertained by the exercise of due diligence . **See Commonwealth v. Bennett**, [] 930 A.2d 1264, 1272 ([Pa.] 2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests and explain why he could not have learned the new facts earlier with the exercise of due diligence. **Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa.Super. 2010).

***Commonwealth v. Diggs***, 220 A.3d 1112, 1117 (Pa.Super. 2019).

Here, the record belies appellant's claims. Indeed, as the PCRA court noted:

> [Appellant] claims that he was completely unaware of Boseman and what was allegedly witnessed until 2014 when his sister and uncle attended a neighborhood block party. However, in her affidavit, [appellant's] sister[,] Sharon Moore[,] states that she was at a "24 & Thompson Street" reunion with "my brother [sic] old friends," who told her about Boseman. Thus, Boseman was known to [appellant's] circle of friends and neighbors if they mentioned him at a neighborhood block party. Moreover, [appellant] testified on his own behalf at trial, and stated that on the night of the murder, he left the house after talking to Colefield and walked to 24th and Thompson, where he had a conversation with "a few fellows" standing on the corner. [(Notes of testimony, 11/19/80 at 84-85.)] [Appellant] further testified that he saw Freddy Tomlin in his car and that Tomlin gave him a ride to his aunt's house. [(***Id.*** at 85.)] In Boseman's affidavit, he states that at the time of the shooting, he was outside in a car "with two (2) other guys their names are tall Bruce, real name is Bruce Ward A.K. [sic] Bruce Earl, and Freddy Tomlin. Tall Bruce got out of the car and went into the house, returned quickly telling us that fat Bruce Porter had been shot and we immediately drove off." (Boseman Aff. ¶ 1). Thus, [appellant] was aware of Tomlin at the time of trial and any information Tomlin may have had about the murder, including his alleged presence in the car with Boseman and Ward, would have been easily ascertainable before trial. As [appellant] has failed to demonstrate that he could not have obtained this evidence with the exercise of due diligence, no relief is due.

PCRA court opinion, 6/3/19 at 7-8.

Based on our review of the record, we find that the PCRA court's conclusion that appellant failed to exercise due diligence is supported by the record and is free of legal error. Accordingly, appellant failed to plead or prove any exception to the PCRA time-bar. Because appellant's petition is untimely, we do not have jurisdiction to consider the merits of his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/20