J-S08001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAROLD JOHN MCGURL, JR. | : | |
| | : | |
| Appellant | : | No. 869 MDA 2021 |

Appeal from the PCRA Order Entered June 11, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0002107-2016

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 27, 2022**

Harold John McGurl, Jr. appeals *pro se* from the denial of his Post-Conviction Relief Act ("PCRA") petition.  We affirm.

The PCRA court summarized the facts as follows:

[Appellant] met with Brittany Fenstermacher on October 7, 2016 in the Borough of Ashland, Schuylkill County.  Fenstermacher and [Appellant] had dated in 2015 but she was then living in Ashland with her boyfriend, Shane Parker.  Earlier in the day she had been traveling in Ashland with Parker in a distinctive blue-colored Ford Focus automobile.  Upon meeting with Fenstermacher in the later afternoon of October 7, 2016, [Appellant] bought a six-pack of beer which he and Fenstermacher drank in a park in the borough. They then went to a bar called The Drunken Monkey.  While they were at the bar, Parker texted and called Fenstermacher numerous times.  Fenstermacher noticed that [Appellant] was becoming more belligerent and obnoxious as he was drinking alcoholic beverages, including saying that he was going to get in a fight with Parker.  Thereafter, Fenstermacher received another call from Parker on her cellphone.  [Appellant] picked up the cellphone, answered the call, and then walked into the bathroom with Fenstermacher's phone.  Upon Parker's inquiry, [Appellant] told Parker that he was "Harry," that Fenstermacher was not

coming to the phone, and that Parker had to get out of the house or [Appellant] was coming to get him out of the house.

Krystal Semerod was at The Drunken Monkey on the evening of October 7, 2016. [Appellant] told her that his girlfriend had been being beaten and that he was getting into a fight with the guy who beat her. Semerod had knives attached to the side of her purse. [Appellant] asked her for a knife, saying that the other guy had a gun and that [Appellant] was "going after" him. Semerod gave a knife to [Appellant].

Eventually, after hours of drinking, Fenstermacher and [Appellant] left the bar. As they were walking on the sidewalk towards her home, the blue Ford Focus passed and [Appellant] stated, "there comes that M . . . F . . . right now." Fenstermacher saw the driver park the car about two to three homes away from her home. As [Appellant] approached the car, the driver's side door opened. Fenstermacher became frightened that a confrontation was going to occur and she ran the other way and into her home.

Jordan Adams, Parker's brother, was driving the Ford Focus. He parked the vehicle, got out, turned and saw [Appellant] holding a knife above his (Adams'[s]) head. . . [Appellant] asked if Adams was Parker's brother and stated that he was going to "end" Adams. Adams backed up but [Appellant] approached him slashing the knife at Adams'[s] head and face. Adams kicked [Appellant] who fell back and then came at Adams, again slashing at Adams with the knife. Adams knew his body had been hit during the altercation. After Adams kicked [Appellant] again, [Appellant] fell and the two men struggled with Adams hitting [Appellant]. Adams thought [Appellant] was punching him, however, Adams saw blood dripping from his body, got up and went for help at the home of a neighbor, Richard Shoup.

[Appellant] followed Adams but he ran away after Shoup, who had come outside onto his porch, yelled. Adams had been stabbed numerous times, including in the ear, eye, triceps, shoulder, and the stomach area of his shirt had been slashed. . . . Shoup attempted to stop some of the bleeding by applying towels and a tourniquet to Adams. Emergency medical personnel arrived and treated Adams at the scene before he was transferred to Geisinger Medical Center where he was treated for hemorrhagic shock – a potentially fatal condition due to active bleeding from

multiple stab wounds – given intravenous therapy, and blood transfusions. Adams'[s] care was subsequently transferred to the trauma surgery service in the hospital. Adams continued to suffer from an apparent permanent damage to his one arm as of the time of trial.

PCRA Court Opinion, 6/11/21, at 3-5 (citations omitted).

In the hours after the incident occurred, Pennsylvania State Police Corporal Alan J. Zulick attempted to contact Appellant on his cellphone. Appellant answered the phone call and told Corporal Zulick that he had been in a fight and thought that he was in trouble, before abruptly hanging up. Appellant was subsequently arrested and charged with criminal attempt to commit murder in the first degree, recklessly endangering another person, and two counts each of aggravated assault and simple assault. Upon arrest, Appellant directed police to the street drain where he had thrown the knife. Police recovered the knife and photographed Appellant, who had a small laceration on a finger and a mark under his left eye.

Two hearings involving Appellant's bail were held pre-trial. Schuylkill County Assistant District Attorney Debra Smith ("Attorney Smith") represented the Commonwealth at both hearings. At the first hearing, Attorney Smith advised the court of an agreement reached between the prosecuting ADA and Appellant to reduce his bail. After inquiring about Appellant's living arrangements, the court granted Appellant a bail reduction. At the second hearing, Appellant failed to appear. Accordingly, Attorney Smith requested that Appellant's bail be revoked. The court granted the

Commonwealth's request and the hearing concluded. Thereafter, the prosecution of Appellant's case was transferred to the Pennsylvania Attorney General's Office due to the election of a new District Attorney who had previously served in the Schuylkill County Public Defender's Office ("Public Defender's Office"). Attorney Smith also left the Schuylkill County District Attorney's Office for a position the Public Defender's Office, where she was assigned to represent Appellant.

Now represented by Attorney Smith, Appellant proceeded to a jury trial at which he testified that he acted in self-defense. At the conclusion of trial, Appellant was convicted of all charges. In preparation for sentencing, the trial court discovered that Attorney Smith's name was listed as the prosecuting attorney at the first bail hearing. Since the bail hearing took place before a different judge and had not been transcribed, the trial court promptly held a hearing to determine the scope of knowledge Appellant, Attorney Smith, and the Commonwealth had of this potentially "troubling" pre-trial event. N.T. Hearing, 4/20/18, at 5.

At the hearing, Attorney Smith testified that she was unaware that she had any prior role in Appellant's case and, therefore, had not discussed it with Appellant. *Id*. at 7-8. The prosecutor from the Attorney General's Office was also surprised to hear this revelation. *Id*. at 7. Appellant advised the court that he had been present at his first bail hearing and the Commonwealth was represented by ADA Rice, not Attorney Smith. *Id*. at 8. The trial court

concluded the hearing by ordering the transcription of the bail hearings, removing the Public Defender's Office from the case, and appointing new counsel to represent Appellant at sentencing and on appeal. *Id*. at 13.

On June 13, 2018, the trial court sentenced Appellant to an aggregate term of ten to twenty years of incarceration. Appellant did not file a post-sentence motion but did pursue a direct appeal. On appeal, Appellant challenged the sufficiency of the evidence to support his criminal attempt to commit first-degree murder conviction. We affirmed the trial court's judgment of sentence and our Supreme Court denied appellant's subsequent petition for allowance of appeal. ***See Commonwealth v. McGurl***, 217 A.3d 418 (Pa.Super. 2019) (non-precedential decision), *appeal denied*, 218 A.3d 382 (Pa. 2019).

Thereafter, Appellant filed an "Application for leave to argue oral motion for extraordinary relief," in which he argued that trial counsel was ineffective because counsel represented him while under a conflict of interest. The trial court construed the filing as a timely *pro se* PCRA petition and re-appointed direct appeal counsel. After Appellant received a letter from then-PCRA counsel indicating that he found no merit to Appellant's claim and would not be filing a PCRA petition on Appellant's behalf, Appellant submitted a second *pro se* PCRA petition mirroring the substance of his initial filing and a letter requesting that the PCRA court appoint new counsel.

The PCRA court appointed new PCRA counsel to represent Appellant, who later submitted a no-merit letter and motion to withdraw. In the filing, PCRA counsel identified the conflict-of-interest issue in addition to six other issues that Appellant wished to raise. The Commonwealth filed a response to the no-merit letter, agreeing with PCRA counsel that all of Appellant's claims lacked merit. However, the PCRA court denied counsel's request, scheduling an evidentiary hearing after finding that the conflict-of-interest issue could not be resolved without further factual development of the record.

On March 26, 2021, the first part of Appellant's PCRA hearing was held. Appellant testified that while Attorney Smith was present during his bail reduction hearing, he thought a different ADA handled his hearing. *See* N.T. PCRA Hearing, 3/26/21, at 13. Appellant was not present for the bail revocation hearing and did not find out until after trial that Attorney Smith had represented the Commonwealth. *Id*. at 14-15.

On April 16, 2021, the second part of Appellant's PCRA hearing was held. Attorney Smith testified, explaining that while she had no independent recollection of representing the Commonwealth at either of Appellant's bail hearings, she did not dispute the accuracy of the record. *See* N.T. PCRA Hearing, 4/16/21, at 15. Attorney Smith detailed the established procedure by which the District Attorney's Office assigned two ADAs to handle all bail hearings on a particular day. *Id*. at 15. She described the assignment as an administrative task, since at the start of each day ADAs followed an

established script for each hearing and filled out a standard form at the conclusion of the hearing. *Id*. The ADAs handling the bail hearings were given a packet information about each defendant's bail in lieu of the case file, so they were not familiar with the facts of the case. *Id*. At the conclusion of the hearing, the PCRA court took the matter under advisement and granted both sides the opportunity to file post-hearing briefs.

PCRA counsel submitted a post-hearing no merit letter and renewed his request to withdraw. Meanwhile, Appellant submitted a *pro se* letter disagreeing with PCRA counsel's argument that his conflict-of-interest claim had no merit and requesting the appointment of new PCRA counsel. After reviewing post-hearing briefs from both sides, and Appellant's letter, the Court denied Appellant's PCRA petition by order and opinion, agreeing with PCRA counsel that all issues raised by Appellant were meritless. The PCRA court also granted counsel's motion to withdraw but denied Appellant's request for the appointment of new counsel. This timely *pro se* appeal followed. Both Appellant and the PCRA court complied with the mandates of Pa.R.A.P. 1925.

Preliminarily, we note appellate briefs must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2101; *see also* Pa.R.A.P. 2111, 2114-2119. Accordingly, briefs filed with this Court must include a jurisdictional statement, a statement of the scope and standard of review, a statement of the question involved, a statement of the case, a summary of the argument, and a conclusion stating the precise relief

sought. *See* Pa.R.A.P. 2111(a). Most importantly, appellate briefs must contain an argument section that develops claims through meaningful discussion supported by pertinent legal authority and citations to the record. Pa.R.A.P. 2111(a)(8); Pa.R.A.P. 2119. We may dismiss an appeal if the appellant fails to comply with the briefing requirements of our appellate rules. *See* Pa.R.A.P. 2101; *see also Commonwealth v. Adams*, 882 A.2d 496, 497-98 (Pa.Super. 2005). Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. *Id*. at 498.

Instantly, Appellant's one-page brief falls far short of these standards. It does not include a statement of the scope of review, standard of review, or the questions involved. *See* Pa.R.A.P. 2111(a)(2). While Appellant's five-sentence argument does reference a PCRA hearing, the argument is undeveloped and contains no citations to any other authorities of any kind. On this basis, we could dismiss Appellant's appeal, as he substantially fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2101; *Adams*, *supra*.

Notwithstanding the numerous defects in Appellant's brief, we will address the one claim that we are able to discern despite its shortcomings.[1] Appellant alleges that Attorney Smith's involvement in his bail hearings and

---

[1] Despite requesting and receiving an extension of time to file an appellate brief, the Commonwealth has failed to do so.

later representation of him at trial amounts to a conflict of interest that denied him the right of effective assistance of counsel. *See* Appellant's brief at unnumbered 1.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." ***Commonwealth v. Diggs***, 220 A.3d 1112, 1116 (Pa.Super. 2019). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." ***Id***. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Id***. "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (citing ***Commonwealth v. Miner***, 44 A.3d 684, 688 (Pa.Super. 2012)).

Appellant raises an allegation of trial counsel ineffectiveness. Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. ***See Commonwealth v. Becker***, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's

interests; and (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

"An attorney owes his client a duty of loyalty, including a duty to avoid conflicts of interest. The attorney's duty of loyalty is the obligation of counsel to avoid actual conflicts of interest that would adversely affect his ability to perform on behalf of his client." *Commonwealth v. Tedford*, 960 A.2d 1, 54 (Pa. 2008). Generally, an appellant cannot prevail on a conflict-of-interest claim absent a showing of actual prejudice. *See Commonwealth v. Collins*, 957 A.2d 237, 251 (Pa. 2008). Prejudice is presumed when the appellant shows that trial counsel was burdened by an actual, rather than mere potential, conflict of interest. *Id*. To show an actual conflict of interest, the appellant must demonstrate that counsel "actively represented conflict interests" and that those conflicting interests "adversely affected his lawyer's performance." *Id*.

Appellant's claim is that Attorney Smith was ineffective for representing Appellant when she previously appeared on behalf of the Commonwealth at his bail hearings. *See* Appellant's brief at unnumbered 1. Specifically, Appellant asserts that Attorney Smith "perjured herself" when she testified to having no recollection of Appellant's bail proceedings. *Id*. Instead, Appellant asserts that she did have knowledge of the first proceeding. *Id*. Since the charges against him were read by the court at that hearing, the Attorney

Smith had prior "knowledge of the case" that permeated the proceedings to a degree that he was denied the right to effective assistance of counsel. *Id*.

The PCRA court disagreed. *See* PCRA Opinion, 6/11/21, at 14. In reaching this decision, the PCRA court credited Attorney Smith's testimony that she did not remember the bail proceedings. *Id*. at 12. Additionally, counsel's role had been limited and no evidence was elicited at the hearings. Accordingly, the court found that Attorney Smith's prior representation where she "had not presented, reviewed, or utilized any evidence of the criminal episode against [Appellant]" had no bearing on her representation of Appellant at trial. *Id*. at 14. Thus, there was no basis upon which to presume that prejudice resulted. Since Appellant had advanced no argument explaining how he was prejudiced, the court denied the claim. *Id*. We agree.

The PCRA court made its factual findings and credibility determinations, and as the record evidence supports them, they are binding upon us on appeal. *See*, *e.g. Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019). Accordingly, we accept the PCRA court's finding that Attorney Smith did not discover the fact that she had represented the Commonwealth at Appellant's bail hearing until after trial. Moreover, there was no evidence that Attorney Smith viewed the Commonwealth's case file or was involved in trial preparation in her capacity as a prosecutor. As such, we discern no abuse of discretion in the PCRA court's determination that Attorney Smith's prior involvement had no influence on her preparation or presentation of Appellant's

case. Since Appellant has failed to show that he was actually prejudiced by trial counsel's prior employment, his sole allegation of error fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2022