J-S17012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JIQUAN BELL | : | |
| | : | |
| Appellant | : | No. 76 EDA 2021 |

Appeal from the PCRA Order Entered September 18, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002010-2011

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 17, 2022**

Jiquan Bell appeals from the order denying his first Post Conviction Relief

Act ("PCRA") petition.  We affirm.

The trial court previously summarized the facts as follows:

On June 22, 2010, Lamar Murphy and Hassan Polk met and
rode their bikes up to the 1400 block of North Edgewood Street,
Philadelphia.  While Murphy and Polk were on Edgewood Street,
Polk noticed a red car driving through the block approximately
three times with multiple people in it, including [Appellant].

At approximately 3:12 p.m., after the red car had passed
the two boys again, [Appellant], wearing a gray T–shirt, was
standing on the corner of Edgewood and Media Streets.  At this
time, Murphy and Polk were on the sidewalk in front of 1438
Edgewood Street, while Murphy was talking to a friend across the
street.

While Murphy was talking to his friend, Polk noticed
[Appellant] walking down the street towards them.  [Appellant]
then pulled his shirt up to cover the bottom of his face, pulled out
a gun while standing in the middle of the street, and began
shooting at Murphy and Polk.  [Appellant], attempting to shoot

Polk, fired his shot which struck Murphy in the head as Polk began to run away from [Appellant]. [Appellant] continued to shoot multiple times at Polk as he fled down the street, striking Polk once in the shoulder. Polk fled to 60th Street where he then got a ride to Lankenau Hospital. [Appellant], meanwhile, fled the scene towards Media Street.

Responding police officers arrived to find Murphy lying on the sidewalk with a gunshot wound to his head. Officers placed Murphy in the back of a police vehicle and transported him to the Hospital of the University of Pennsylvania, where he was pronounced dead at 3:39 p.m.

Police recovered a bullet fragment from the front door of 1425 North Edgewood Street. A bullet was also recovered from Murphy's body [and] was compared to the bullet fragment recovered from the home. Subsequent forensic analysis established that both bullets were approximately .38 caliber in weight and were fired from the same weapon. No cartridge casings were recovered from the scene.

On July 13, 2010 and July 14, 2010, Donte Yarde and [Appellant] were both incarcerated at the Youth Study Center. While there, Yarde overheard [Appellant] talking to other youths about the tattoos on his face. [In pertinent part, Appellant] stated that he "just walked down Edgewood [S]treet and started shooting," killing Murphy with the first shot and firing multiple times at Polk. Police subsequently interviewed Yarde, who identified [Appellant] as the individual who stated he had shot at both Murphy and Polk. Polk also identified [Appellant] to the police as the shooter during an interview.

Trial Court Opinion, 2/8/16, at 2–4 (footnotes and citations omitted).

Appellant was arrested and charged with homicide, criminal conspiracy, carrying a firearm without a license, possessing an instrument of crime, and two counts of aggravated assault. At trial, testimony revealed that, at the time of the shooting, Appellant had a GPS tracking unit on him as part of his youth probation. *Id*. at 6. The tracker showed Appellant in the immediate

vicinity of where the incident occurred and at the relevant time. *Id*. Ultimately, a jury found Appellant guilty of the aforementioned offenses. The trial court immediately sentenced him to life imprisonment without the possibility of parole for the homicide charge. No further penalty was imposed on the remaining charges.

Appellant filed a timely post-sentence motion challenging the weight of the evidence, which was denied.[1] On direct appeal, Appellant challenged the sufficiency of the evidence to prove conspiracy to commit murder beyond a reasonable doubt.[2] Appellant did not pursue a weight-of-the-evidence claim. On May 9, 2017, this Court agreed with Appellant that there was insufficient evidence to establish that he entered into an agreement with anyone to commit the shooting. Accordingly, we vacated Appellant's conspiracy conviction, but affirmed the remainder of the judgment of sentence.[3] *See Commonwealth v. Bell*, 170 A.3d 1200 (Pa.Super. 2017) (unpublished

_____

[1] The post-sentence motion does not appear in the certified record. However, it is undisputed that trial counsel filed a post-sentence motion challenging the weight of the evidence. *See* PCRA Court Opinion, 2/12/21, at 15; *see also* Trial Court Opinion, 7/26/12, at unnumbered 1.

[2] The direct appeal followed the reinstatement of appellate rights *nunc pro tunc*. Appellant's initial appeal was dismissed after trial counsel failed to comply with an order to file a docketing statement. During the ensuing PCRA proceedings, counsel was appointed to represent Appellant. PCRA counsel continued to represent Appellant until the litigation of his direct appeal *nunc pro tunc* was completed.

[3] Since the trial court sentenced Appellant to no further penalty on the conspiracy conviction, we did not remand for resentencing.

memorandum at 5). Appellant did not seek allowance of appeal in the Pennsylvania Supreme Court.

Appellant filed a timely *pro se* PCRA petition. *See* PCRA petition, 6/4/18, at 4. Appointed PCRA counsel filed a motion to withdraw and no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). The PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, indicating that the court had conducted an independent review and agreed with PCRA counsel's determination that Appellant's claims lacked merit. *See* Order, 5/9/19. Appellant filed a *pro se* response raising additional allegations of trial counsel ineffectiveness. *See* Response to 907 Notice, 6/11/19. Thereafter, appointed counsel filed a supplemental *Turner*/*Finley* letter responding to the additional claims that Appellant wished to raise and explaining why they were similarly meritless. *See* Letter, 11/26/19.

The PCRA court issued another Rule 907 notice of its intent to dismiss the petition without a hearing. *See* Order, 1/2/20. In his response to the second notice, Appellant raised eight new claims, including an allegation that direct appeal counsel was ineffective for failing to advance his challenge to the weight of the evidence. *See* Response to 907 Notice of Intent to Dismiss, 1/23/20, at 11. PCRA counsel issued a second supplemental *Turner*/*Finley* letter responding to the eight new claims, explaining why they were meritless,

and reiterating his request to withdraw as counsel. *See* Letter, 5/15/20. In response, the PCRA court issued a third Rule 907 notice indicating its intent to dismiss the petition without a hearing. *See* Order 7/27/20. Finally, on September 18, 2020, the PCRA court denied Appellant's PCRA petition and granted counsel's motion to withdraw. Appellant filed a *pro se* notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement.[4] Thereafter, the PCRA court issued its Pa.R.A.P. 1925(a) opinion.

Appellant raises one issue for our review: "Whether the court erred in dismissing the PCRA petition based upon the claim wherein Appellant alleged ineffective assistance of [a]ppellate counsel for failure to raise a claim on direct appeal challenging the weight of the evidence." Appellant's brief at 6.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Diggs*, 220 A.3d 1112, 1116 (Pa.Super. 2019). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." *Id*. "It is

---

[4] After filing his concise statement *pro se,* Appellant retained counsel who submitted an appellate brief on his behalf.

an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant raises an allegation of appellate counsel ineffectiveness. Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. ***See Commonwealth v. Becker***, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. ***Id***. The failure to establish any of the three prongs is fatal to the claim. ***Id***. at 113.

In his sole allegation of error Appellant attacks appellate counsel's effectiveness for failing to challenge the weight of the evidence on appeal.[5] Pertinent to the arguable-merit prong of Appellant's ineffectiveness claim, we observe that an appellate court's standard of review when presented with such a claim is distinct from the standard of review applied by the trial court. As our Supreme Court has explained:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial

---

[5] It is undisputed that trial counsel properly preserved the weight of the evidence claim by raising it in Appellant's post-sentence motion.

court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. As this Court has explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not excised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Id***.

Appellant avers that direct appeal counsel should have challenged the weight of the evidence because Donte Yarde and Hassan Polk, who were key witnesses, recanted their statements on the stand. ***See*** Appellant's brief at 9-10. Appellant's arguments about the recanting witnesses did not persuade the PCRA court, who also sat as the trial court. ***See*** PCRA Opinion, 2/12/21, at 15. The PCRA court addressed Appellant's specific arguments regarding the two Commonwealth witnesses as follows:

> As for [Appellant's] specific arguments, it is true that Mr. Polk became uncooperative at the preliminary hearing and recanted the identification of [Appellant] that he had given to the

police, when he had picked [Appellant] out of a photospread as the shooter.[9] It is also true that Mr. Yarde recanted his statement to police that [Appellant] had confessed the crimes to him, and he did not identify [Appellant] as the shooter at trial. However, the prior statements to police by Mr. Polk and Mr. Yarde were both admissible in evidence as prior inconsistent statements signed and adopted by the declarants. Moreover, it is well-established that where a witness at trial recants a statement he made to police, the factfinder is free to evaluate both the [witness's] statement to police as well as his testimony at trial recanting that statement, and [is] free to believe all, part, or none of the evidence. Such recantations are notoriously unreliable.

___

[9] Mr. Polk did not testify at the trial. His preliminary hearing testimony was read to the jury under the former testimony exception to the hearsay rule for unavailable witnesses. *See* Pa.R.E. 804(b)(1).

Accordingly, the recantations of Mr. Yarde and Mr. Polk did not undermine the strength of the evidence in this case. As a result, any appeal premised upon a weight claim would not have been successful, and appellate counsel was not ineffective for failing to make such a claim.

PCRA Court Opinion, 2/12/21, at 16 (citations omitted). Thus, the PCRA court determined that since the evidence fully supported the verdict, "appellate counsel had no reason to raise the issue on appeal" and the ineffectiveness claim lacked arguable merit. *Id*. at 15. We agree.

Our review of the record reveals no indication of bias or ill-will on the part of the PCRA court in its analysis. As the PCRA court aptly pointed out, it is well-settled that the jury is free to believe all, part or none of the evidence presented and to evaluate the credibility of the witnesses. *See* ***Commonwealth v. Ellison***, 213 A.3d 312, 319 (Pa.Super. 2019). Here, the jury chose to credit the initial statements of these witnesses. It is not for this

Court to reweigh the evidence and substitute its judgment for that of the fact-finder. *Id*. Moreover, in making his claim, Appellant ignores the additional circumstantial evidence that pointed to him as the killer, including eyewitness Jeanette Drayton's unwavering identification of Appellant and the GPS data that placed Appellant at the crime scene. Thus, we find that the PCRA court, did not abuse its discretion by concluding that a challenge to the weight of the evidence supporting Appellant's conviction would have been meritless. Accordingly, appellate counsel was not ineffective for failing to advance this claim on direct appeal and no relief is due on Appellant's sole allegation of error.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2022