J-S28009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY ALLEN HESS | : | |
| | : | |
| Appellant | : | No. 487 MDA 2019 |

Appeal from the PCRA Order Entered March 8, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0004812-2014

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 05, 2020**

Gregory Allen Hess appeals from the order that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

The PCRA court offered the following droll summary of the history of this case:

> There was an old woman who swallowed a fly; I do
> not know why she swallowed the fly, poor old woman
> she was sure to die.
>
> I recite this children's nursery rhyme as it mirrors [Appellant's] varieties of self-induced dilemmas as well has his problem solving skills.  Prior to the instant case, [Appellant] had been charged with hiring Calvin Jones, Jr. to kill his wife' s lover.  Mr. Jones then reported this matter to the state police and [Appellant] was charged for the solicitation.
>
> In the process of that proceeding, [Appellant] then swallowed the spider to catch the fly, as he then hired Michael Crampton to kill Calvin Jones to prevent Jones from testifying against him in that case.  Mr. Crampton reported this matter to the District Attorney's Office and [Appellant] was again charged with a second offense similar to the first.

[Appellant] then swallowed the bird to eat the spider when he hired Doensae Bryant to kill Michael Crampton to prevent Crampton from testifying against him. [Appellant] was acquitted of soliciting Calvin Jones in the trial, which preceded the instant case. The second and third solicitation cases were consolidated. [Appellant] went to trial on those two solicitations and was ultimately convicted.

Order Denying PCRA Petition, 3/8/19, at 1-2.

Appellant was sentenced to an aggregate term of twelve to twenty-four years of imprisonment, and his direct appeal resulted in no relief. *See Commonwealth v. Hess*, 175 A.3d 387 (Pa.Super. 2017) (unpublished memorandum).

On July 13, 2018, Appellant, through counsel, filed a timely PCRA petition. Therein, he alleged that his trial counsel was ineffective in failing to request a mistrial or to obtain exculpatory text messages between Mr. Crampton and Trooper Shawn Wolfe, and that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing that favorable plea deals were offered to two witnesses who testified against Appellant. Through an amended petition, Appellant added an after-discovered evidence claim based upon the affidavit of an individual professing that Mr. Crampton had admitted fabricating the murder-for-hire story in order to curry favor with the district attorney.

The PCRA court held hearings on the claims and permitted the filing of post-hearing memoranda. Ultimately, it denied Appellant's petition by order of March 8, 2019. Appellant timely filed a notice of appeal, and both Appellant

and the PCRA court complied with Pa.R.A.P. 1925. However, because Appellant's Rule 1925(b) statement did not include reference to the claim regarding after-discovered evidence, Appellant requested and obtained from this Court a remand with leave to file a supplemental Rule 1925(b) statement. After additional delays caused by Appellant's *pro se* filings and questions concerning his representation status, this appeal is ripe for our consideration.

Appellant presents the following questions to this Court:

> I. Whether the [PCRA] court erred by denying [A]ppellant's PCRA petition as trial counsel was ineffective for failing to request a mistrial after members of the jury became aware of Appellant's prior case.
>
> II. Whether trial counsel provided ineffective assistance of counsel by failing to obtain text messages between Commonwealth witness, Michael Crampton, and Trooper Wolfe.
>
> III. Whether the Commonwealth failed to disclose the existence of plea deals with Michael Crampton in violation of **Brady v. Maryland**.
>
> IV. Whether the [PCRA] court erred by denying the Appellant's Petition for Post-Conviction Relief raising after discovered evidence pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi).

Appellant's brief at 5.

We begin with a review of the pertinent legal principles. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Rizvi**, 166 A.3d 344, 347 (Pa.Super. 2017). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine

- 3 -

issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa.Super. 2019) (internal quotation marks omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks omitted).

Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error." *Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa.Super. 2020) (internal quotation marks omitted). "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Id*. at 16 (cleaned up). The failure to establish any prong is fatal to the claim. *Id*. at 15.

Appellant first contends that trial counsel rendered constitutionally-deficient assistance by not moving for a mistrial. Specifically, Appellant extensively details evidence of record that at least one juror in the instant

murder-for-hire case learned of a prior case in which Appellant was acquitted of the alleged solicitation of Mr. Jones to commit murder, and discussed it with other jurors. *See* Appellant's brief at 24-29. Appellant maintains that the jurors' exposure to this information and improper mid-trial discussions about it were highly prejudicial, "effectively stripped him of the presumption of innocence," and subverted his due process rights. *Id*. at 29-30. Appellant cites his testimony at the PCRA hearing that he desired a mistrial on this basis, but counsel failed to consult him. *Id*. at 30-31. Appellant further suggests that his trial attorneys had no reasonable basis to refrain from seeking a mistrial, because avoiding going through a second trial was not reasonably designed to effectuate Appellant's interests. *Id*. at 31.

The PCRA court, on the other hand, cites contrary testimony which it deemed credible, indicating that Appellant's trial attorneys **did** discuss the option of seeking declaration of a mistrial in response to this information. *See* Order Denying PCRA Petition, 3/8/19, at 5. During this discussion, "everyone agreed that they were halfway through the case, they all felt confident in the way in which the testimony was going, and they all believed that the jury knowing that [Appellant] had been acquitted of very similar charges would weigh in their favor and not be detrimental to their client." *Id*. Indeed, all three attorneys and Appellant agreed not to pursue a mistrial, but to instead request a cautionary instruction, which the trial court gave to the jury. *Id*.

The PCRA court's factual findings and credibility determinations are supported by the record, and thus must be accepted by this Court. **See** N.T. PCRA Hearing, 11/20/18, at 54, 78-79, 109 (testimony from Appellant's trial counsel that a mistrial motion was discussed with Appellant and it was decided as a group to proceed instead).[1] As such, Appellant's challenge to the reasonable-basis prong of the ineffectiveness test, which is premised upon his testimony that contradicts separate testamentary evidence accepted as credible by the PCRA court, fails. Since Appellant cannot establish that counsel lacked a reasonable basis for forgoing a mistrial, we have no basis to reverse the PCRA court's denial of his first claim.

Next, Appellant contends that his trial attorneys were ineffective in not obtaining certain text messages. The PCRA court offered the following background information concerning this issue:

> During the course of trial, there was testimony from Michael Crampton in which he referred to a text communication between himself and trooper Shawn Wolfe of the Pennsylvania State Police. The communication allegedly happened during a period of time that [Mr.] Crampton was the subject of a fugitive warrant. . . .
>
> During the PCRA hearing, testimony revealed that trial counsel for [Appellant] immediately met with the District Attorney who was trying the case to inquire as to why they had not received copies of these text messages. Testimony also revealed that it was explained to counsel that there were no text messages and

---

[1] The transcript from the November 20, 2018 portion of the PCRA hearing is not included in the certified record. However, "where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." **Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa.Super. 2019).

that the witness was mistaken. [Trooper Wolfe] testified that there was a phone call in which [Mr. Crampton] told the trooper that he desired to turn himself in.

Order Denying PCRA Petition, 3/8/19, at 2-3.

Appellant argues that trial counsel violated his right to effective assistance of counsel in "specifically disregarding his demand" that they obtain the text messages to which Mr. Crampton testified. Appellant's brief at 32-33. Appellant suggests that these communications "necessarily concern[ed] his fugitive status, and the need for [Mr.] Crampton to surrender . . . in order to receive a deal for his testimony against Appellant." *Id*. at 33. Appellant posits that these exculpatory communications, whether they were via text message or telephone conversation, should have been pursued by counsel to impeach Mr. Crampton. *Id*. Specifically, Appellant speculates that if Trooper Wolfe had been called to testify about the communications and had denied offering any deal to Mr. Crampton, "much stood to be gained by the jury in assessing through his demeanor, deportment, expressions and statements, the Trooper's credibility, regarding any potential deal or agreement during cross-examination, and in undermining [Mr.] Crampton's testimony about sending text messages." *Id*. at 34.

Upon consideration of the testimony, the PCRA court found no arguable merit to the claim or prejudice suffered by Appellant, because it was "satisfied that these text messages do not exist . . . ." Order Denying PCRA Petition, 3/8/19, at 3. Concerning the allegation that counsel should have called

Trooper Wolfe to question him about his communications with Mr. Crampton during that time, the PCRA court found Appellant's proof of both the arguable merit and reasonable basis prongs lacking. The court concluded that the existence of any exculpatory evidence in these conversations was fabricated "out of whole cloth." *Id*. at 4. Moreover, the PCRA court credited counsels' position of strategizing that it "would be more productive to argue missing facts to the jury, which they did vehemently." *Id*. "The alternative would have been to call the [trooper], have him explain, and lose any traction with the jury by proving that there was no exculpatory evidence for [Appellant] in these communications." *Id*.

We again find no basis to disturb the PCRA court's findings. Trooper Wolfe testified at the PCRA hearing that he did not receive any text message concerning Mr. Crampton's failure to appear at the preliminary hearing. *See* N.T. PCRA Hearing, 11/28/18, at 9, 11. Rather, Trooper Wolfe indicated he received a call from Mr. Crampton from a phone with a blocked number, and that he shared the information with Appellant's trial attorneys. *Id*. at 9-10. Further, counsel reasonably strategized that it was not worth the risk of calling Trooper Wolfe to question him about the alleged text messages or phone call when they had no proof of a text message of call, and no idea what Trooper Wolfe's testimony would have been. *See* N.T. PCRA Hearing, 11/20/18, at 51-52, 73-74.

Appellant next claims that the PCRA court erred in denying relief on his *Brady* claim. Our Supreme Court summarized the law relevant to the adjudication of such claims as follows:

> The law governing alleged *Brady* violations is well-settled. In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.
>
> On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

Appellant contends that the Commonwealth violated his *Brady* rights by failing to disclose that it offered favorable treatment to Mr. Crampton and Edward Luttrell in exchange for their testimony, and by neglecting to correct

- 9 -

at trial their perjured denials of the existence of any deal with the prosecution. Appellant's brief at 44-51.

Specifically, Appellant notes that Mr. Crampton had twice asked for drug charges against him to be dismissed in exchange for his testimony against Appellant. *Id*. at 44. The Commonwealth dismissed the charges five days after Mr. Crampton's first request, reinstated them when he failed to appear at the preliminary hearing to testify against Appellant, and *nolle prossed* them again after Mr. Crampton testified at Appellant's trial. *Id*. at 44-45. Yet, Mr. Crampton testified at the trial that he had received no firm promises from the Commonwealth, only that he would receive consideration for his cooperation. *Id*. at 44. Appellant maintains that this circumstantial evidence of an understanding, even if it had not been memorialized in a formal agreement, would have had a profound impact on the outcome of the trial, as it impeached the credibility of an essential witness. *Id*. at 48. Appellant's averments and arguments regarding the prosecutorial accommodations allegedly offered to Mr. Luttrell are substantially similar. *See id*. at 48-51.

The PCRA court denied relief on the **Brady** claim upon finding that Appellant failed to prove that there were any deals that the Commonwealth failed to disclose:

> In this case, both [Mr.] Crampton and [Mr.] Luttrell testified that there was no deal; they were merely told that "consideration would be given." Plea documents reflect that there was no deal; the District Attorney's Office testified that there was no deal, and therefore there was nothing to disclose. [Appellant] asserts that because the [witnesses] were happy with their sentences that

- 10 -

there must have been a deal. This court is satisfied that there is no merit to this . . . claim.

Order Denying PCRA Petition, 3/8/19, at 5-6.

Again, the PCRA court's ruling was based upon its credibility determinations, and those are supported by the record.[2] *See* N.T. PCRA Hearing, 11/28/18, at 24-31, 39-41 (District Attorney David Sunday testifying that there was no deal offered to either Mr. Crampton or Mr. Luttrell prior to Appellant's trial; the reason the charges were initially dismissed against Mr. Crampton was to remove a state parole detainer to render him available to be utilized in the investigation against Appellant, and the second dismissal was based upon the time he had served and the risk of violence he faced remaining in prison as a known "snitch"); N.T. PCRA Hearing, 11/29/18, at 5-8 (Chief Deputy Public Defender Erin S. Thompson confirming testimony regarding the lack of a deal with her client, Mr. Crampton, and the reasons for the dismissal of charges). Therefore, we accept the fact that there was no deal to disclose. Consequently, there was no **Brady** violation and no relief is due.

_____

[2] Since there were no deals to disclose, the Commonwealth did not elicit and/or fail to correct false testimony on the matter from the witnesses at trial. Thus, Appellant's argument based upon federal cases is inapposite. **See** Appellant's brief at 39-44 (citing **Haskell v. Superintendent Greene SCI**, 866 F.3d 139 (3d Cir. 2017), and **Weiss v. Wetzel**, 2:02-CV-01566, 2018 WL 895689 (W.D. Pa. Feb. 14, 2018), for the proposition that the prosecution violated the defendants' constitutional rights when the prosecutors failed to correct witnesses' testimony, known by the prosecutors to be false, that they did not expect anything in exchange for testifying).

Finally, Appellant contends that the PCRA court erred in denying relief on his after-discovered evidence claim. To obtain a new trial based upon after-discovered evidence, a PCRA petitioner must prove that the evidence in question: "(1) was discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) is not cumulative; (3) is not being used solely to impeach credibility; and (4) would likely compel a different verdict." *Commonwealth v. Hannibal*, 156 A.3d 197, 221 (Pa. 2016). Moreover, the "[after-]discovered evidence must be producible and admissible to entitle a petitioner to relief." *Id*.

Appellant's after-discovered evidence was the affidavit and testimony of Eric Hamme, a man who at different times was incarcerated with Mr. Crampton and with Appellant. The court summarized Mr. Hamme's evidence as follows:

> [Mr.] Hamme alleged that he met Michael Crampton while housed in a pre-hearing confinement housing unit between October 29, 2018 and November 1, 2018. [Mr.] Crampton allegedly told [Mr.] Hamme that he had befriended an "old rich guy," learned the details of the case, and then used the information to construct a fictitious murder-for-hire plot in order to get out of prison. Additionally, [Mr.] Crampton allegedly told [Mr.] Hamme that [the District Attorney] promised to drop all of his charges as long as he testified against [Appellant], but that if [Mr.] Crampton was asked about it just to use the word "consider."

PCRA Court Opinion, 11/22/19, at 2 (footnotes omitted).

While Appellant presents argument to this Court concerning how Mr. Hamme's testimony satisfied each of the four prongs of an after-discovered evidence claim, he offers no argument to support the admissibility of Mr. Hamme's testimony. *See* Appellant's brief at 53-62.

- 12 -

The PCRA court determined that one of the reasons Hamme's recitations of Mr. Crampton's out-of-court statements would not be admissible at trial for the truth of the matter asserted was because they did not fall within a hearsay exception. **See** PCRA Court Opinion, 11/22/19, at 4. We agree. Since Mr. Crampton was not a party, his statements could not come in pursuant to Pa.R.E. 803(25), and because he was not an unavailable witness, they were not admissible statements against interest under Pa.R.E. 804(b)(3). With no admissible after-discovered evidence, the claim was properly denied.[3] **See Hannibal**, **supra** at 221.

The PCRA court also determined that, even if the evidence was admissible and admitted, it was not likely to compel a different verdict. The court explained:

> [Mr.] Hamme came forward with the allegation that [Mr. Crampton] made up the story only after [Mr. Hamme] met [Appellant] and his girlfriend look into [Appellant's] sizeable assets. Additionally, the jury would have been made aware of [Mr.] Hamme's prior charges, two counts of intimidation of a victim or witness, forgery, and conspiracy for counterfeiting. For those reasons the jury would have found his testimony wholly lacking in credibility and they would not have rendered a different verdict.

PCRA Court Opinion, 11/22/19, at 6-7.

---

[3] The PCRA court opined that the evidence may have been admissible if offered not for its truth but solely to impeach Mr. Crampton. **See** PCRA Court Opinion, 11/22/19, at 4-5. However, if that were the case, the evidence would not satisfy the third prong of the after-discovered evidence claim: that the evidence "is not being used solely to impeach credibility." **Commonwealth v. Hannibal**, 156 A.3d 197, 221 (Pa. 2016).

Yet again, we have no basis to disturb these findings because they are supported by the record. *See* N.T. PCRA Hearing, 11/29/18, at 15-20 (Mr. Crampton testifying that his trial testimony was truthful and Mr. Hamme's story was a fabrication based in part upon overhearing conversations that Mr. Crampton had with the prisoner housed in between his cell and Mr. Hamme's cell). *See also id*. at 52-54, 59-75 (cross-examination of Mr. Hamme concerning his criminal history and that he drafted his affidavit and presented it to Appellant after Mr. Hamme's paramour investigated Appellant's history and Mr. Hamme learned details about Appellant's case and his financial resources from Appellant while they were imprisoned together). On this basis alone, Appellant's claim was properly denied. *See Commonwealth v. Diggs*, 220 A.3d 1112, 1118 (Pa.Super. 2019) (affirming dismissal of after-discovered evidence claim where the PCRA court determined that the new evidence was "wholly lacking in credibility"). Appellant's final issue fails on this alternate basis as well.

For the reasons detailed above, Appellant has not satisfied his burden of convincing this Court that the PCRA court erred and relief is due. *See Stansbury*, *supra* at 161. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/5/2020