J-S18027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JAMES SMITH A/K/A ROBERT TAYLOR | : | |
| Appellant | : | No. 436 EDA 2020 |

Appeal from the PCRA Order Entered December 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1110581-1996

BEFORE:     PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 30, 2021**

James Smith, a/k/a Robert Taylor (Appellant), appeals *pro se* from the
order entered in the Philadelphia County Court of Common Pleas denying his
serial Post Conviction Relief Act[1] (PCRA) petition.  Appellant avers the PCRA
court erred in dismissing without a hearing his claim of newly and after
discovered evidence,[2] in the form of a recantation letter from the robbery[3]
victim in this matter.  We vacate and remand for an evidentiary hearing, as

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] ***See*** 42 Pa.C.S. §§ 9543(a)(2)(vi), 9545(b)(1)(ii).

[3] 18 Pa.C.S. § 3701.

well as a ***Grazier***[4] hearing to determine whether Appellant wishes to proceed *pro se* and to appoint counsel if he so desires and is found to be indigent.

Preliminarily, we note that although trial in this matter was conducted in 1998, the first filing in the electronic record transmitted on appeal is dated June of 2003. The record does not include any filings that predate this 2003 filing. The only notes of testimony transmitted were of three PCRA hearings in 2010; there were no trial transcripts. The trial docket is similarly truncated — it begins with three entries dated December 4, 1996, then two entries dated August 13, 1998, and then the June 5, 2003, entry for the notice of appeal. Nevertheless, we glean the following factual and procedural history from the PCRA court's opinion, as well as prior memoranda by this Court.

This Court previously summarized:

> On October 20, 1996 at approximately 4:00 a.m., John Smith[5] ("Victim") was sitting in a car waiting for his cousin to pick someone up from a nearby party . . . . Victim observed two men, Aquil Pace and Anthony Palmer, walking in his direction. The two men conferred with Appellant, who was standing in front of his house directly across from Victim's car. As Victim exited the car, he noticed Appellant hand a chrome-plated gun to Pace. Both men approached Victim, drew their guns, removed Victim's [red sweatshirt] and . . . items from his pockets.

---

[4] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[5] In the affidavit attached to Appellant's PCRA petition, the Victim spelled his name "Jon."

- 2 -

***Commonwealth v. Smith***, 337 EDA 1999 (unpub. memo. at 1-2) (Pa. Super.

June 1, 2000) (direct appeal), *appeal denied*, 545 EAL 2000 (Pa. Feb. 5,

2001). The men took from the Victim "approximately $20 cash, personal

photographs, pain medication [for] his recent gunshot wound, and the donut

cushion he used . . . as a result of his wound." PCRA Ct. Op., 10/9/20, at 2.

This Court further summarized:

> After Pace and Palmer searched the car, they dragged Victim down the walkway to where Appellant was standing. [At Appellant's direction,] Pace and Palmer forced Victim to the back of the building, ordered him to lie face down, and threatened to shoot him.
>
> Suddenly, Victim heard his cousin's distinctively loud car approaching. Palmer walked toward the street to investigate while Pace guarded Victim. Gunfire ensued. Pace ordered Victim to stay where he was while Pace also investigated.

***Smith***, 337 EDA 1999 at 2. At this point, the Victim fled

> to a nearby gas station and waited for police to arrive. When police arrived on the scene, [Victim's] cousin saw [Pace] walking out of a house and identified him[.] Police officers arrested . . . Pace, and recovered a chrome-colored handgun from his person. The police then took [Victim] to that same house, where he saw his red sweatshirt hanging outside. [Victim] did not recognize the first person who came out of the house but identified the second person as [Appellant].
>
> [I]nside the house, police recovered [Victim's] money, personal photographs and prescription pain medication. [Victim] admitted at trial that he was taking Tylenol 3 at the time but that he could see and process events without difficulty.
>
> . . . Pace entered into an open plea agreement on charges of robbery, carrying a firearm without a license, and conspiracy. He testified at [Appellant's] trial that [Appellant] and another man robbed [Victim], that they all went to a friend "Manny's" house to sort through what they had stolen from [Victim], and that

> [Appellant] handed Pace the gun and instructed him to go outside and look for the police. It was then that [Victim's] cousin saw Pace and identified him to police. Pace has never recanted his story.

PCRA Ct. Op. at 2-3.

On February 17, 1998, a jury found Appellant guilty of conspiracy[6] and robbery. On August 13, 1998, Appellant received a sentence of 25 to 50 years' imprisonment. He appealed to this Court, which affirmed the judgment of sentence on June 1, 2000. **Smith**, 337 EDA 1999. On February 5, 2001, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. **Smith**, 545 EAL 2000.

Appellant has previously filed two PCRA petitions, both of which were denied. On appeal, this Court affirmed the denials of both, and the Pennsylvania Supreme Court denied allowance of appeal. **Commonwealth v. Smith**, 1791 EDA 2003 (unpub. memo.) (Pa. Super. June 11, 2008) (first PCRA appeal), *appeal denied*, 71 EAL 2009 (Pa. July 7, 2009); **Commonwealth v. Smith**, 1710 EDA 2010 (unpub. memo. at 2) (Pa. Super. Mar. 11, 2011) (second PCRA appeal), *appeal denied*, 210 EAL 2011 (Pa. Sept. 23, 2011).

---

[6] 18 Pa.C.S. § 903.

On October 31, 2016, Appellant filed the underlying, *pro se* PCRA petition, alleging newly discovered facts and after discovered evidence.[7] The petition asserted that on September 14, 2016, the Victim, who was now an inmate at the prison with Appellant, told Appellant his alleged statements to police were fabricated and his trial testimony coerced. Appellant attached to his petition a signed and notarized statement from the Victim, dated September 20, 2016, which averred the following: Victim "was really high on Percocet and Tylenol 3 at the time" of the robbery; he "never told the police [he] saw [Appellant] pass a gun or heard him yell anything;" the Victim could not have seen Appellant passing a gun, as it was dark "and the lighting conditions were very poor;" the Victim "only identified [Appellant as] standing across the street with other people;" the Victim was "angry and frustrated about having been robbed" and "just went along with" the detective's "leading . . . question[s];" the Victim did not read the statement before signing it; the Victim subsequently "tried to take . . . back" his police statement, but the prosecutor and police threatened him with arrest and contempt of court; and the prosecutor coerced him to lie on the stand and

---

[7] The PCRA court noted:

> This petition was filed in 2016 and was assigned to a staff attorney in the PCRA Unit, who inexplicably sat on it for three years. This matter was assigned to this Court on February 12, 2019 as a referral from the staff attorney without any explanation.

PCRA Ct. Op. at 3 n.1.

testify he heard Appellant say, "Don't let him [(the Victim)] see my face." Appellant's Post-Conviction Relief Act Petition, 10/31/16, Exh. A, Affidavit of Jon Smith. Finally, we note the petition requested the appointment of counsel.

In a written response, the Commonwealth agreed that the PCRA court should conduct an evidentiary hearing to evaluate the Victim's credibility and alleged recantation. Commonwealth's Letter Response, 9/16/19, at 3. The Commonwealth further noted that "the only other witness [at trial was cooperating co-defendant Pace,] a so-called 'polluted source' who received a significant benefit from testifying against" Appellant. ***Id.***

On November 21, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. The notice advised, by checking the boxes next to these statements: "The issues raised in the P.C.R.A. petition . . . are without merit[,]" and "Your petition is untimely filed pursuant to 42 Pa.C.S.A. § 9545(b)." Notice Pursuant to Pa.R.Crim.P. 907, 11/21/19. Appellant filed two *pro se* requests for additional time to file a response to the PCRA court's Rule 907 notice. The court acknowledged these requests, but dismissed Appellant's petition on December 18, 2019. In its opinion, the court now found the petition was timely under the newly discovered facts exception of the PCRA, but no relief was due, as: (1) the Victim's alleged "recantation would be used solely to impeach the credibility of a witness," Pace; and (2) the recantation "would not likely result in a

different verdict as the evidence of guilt adduced at trial was overwhelming."

PCRA Ct. Op. at 6-7. Appellant filed a timely *pro se* notice of appeal.[8]

Appellant presents one issue for our review:

Did the PCRA Court commit error and abuse its discretion when it dismissed Appellant's claim of newly -discovered evidence based on the recanted testimony of Jon Smith, the victim, as meritless without holding an evidentiary hearing?

Appellant's Brief at 6.

Appellant avers the PCRA erred in not conducting an evidentiary hearing before dismissing his newly discovered evidence claim. Appellant asserts the only other "evidence linking [him] to the robbery[ was] the inconsistent, self-serving, perjured testimony of an alleged codefendant," Pace, and weighing the new recantation evidence would establish his innocence. Appellant's Brief at 18. Appellant contends the PCRA court should have assessed the Victim's credibility and the significance of his recantation against the evidence as a whole. **Id.** at 26, *citing*, *inter alia*, **Commonwealth v. D'Amato**, 856 A.2d 806, 825 (Pa. 2004) ("[A]s a general matter, recantation evidence 'is notoriously unreliable, particularly where the witness claims to have committed perjury.' [H]owever, . . . even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a

_____

[8] The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

whole."). Appellant points out the PCRA court did not preside over his trial, nor has it ever heard Victim or Pace testify,[9] and argues the court thus has "not made an independent credibility assessment of" the Victim. *Id.* at 27. Appellant thus requests a remand for the court to conduct an evidentiary hearing.

The Commonwealth "agree[s] that a remand for an evidentiary hearing would be appropriate to provide the PCRA court an opportunity to assess the credibility of the victim and his alleged recantation, particularly since [Appellant's] convictions rest on the testimony by the cooperating witness . . . Pace." Commonwealth's Brief at 14. After careful review, we agree.

We note the relevant standard of review:

Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. . . . "

*Commonwealth v. Diggs*, 220 A.3d 1112, 1116 (Pa. Super. 2019) (citations omitted).

We first review whether Appellant's PCRA petition was timely filed. "The PCRA's timeliness requirements are jurisdictional in nature, and a court may

_____

[9] While the limited certified record does not indicate who presided over trial, Appellant states it was the Hon. Edward Bradley, while the Commonwealth states the trial judge was the Hon. Sheldon Jelin. *See* Appellant's Brief at 9; Commonwealth's Brief at 7.

not address the merits of the issues raised if the PCRA petition was not timely filed." ***Diggs***, 220 A.3d at 1117. On direct appeal, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on February 5, 2001. Appellant's judgment of sentence became final, for PCRA purposes, on Monday, May 7, 2001 — the end of the 90-day period for seeking *certiorari* with the United States Supreme Court.[10] ***See*** 1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on Sunday, such day shall be omitted from computation); 42 Pa.C.S.A. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States . . . or at the expiration of time for seeking the review."); Sup. Ct. R. 13.1. Appellant generally then had one year, or until May 7, 2002, to file a PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1) (any PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final). The instant petition was filed more than 14 years later, in October of 2016.

However, the PCRA's general one-year time bar can be overcome by satisfaction of one of the three "narrow" statutory exceptions codified at Section 9545(b)(1), including a claim of newly-discovered facts. ***Diggs***, 220

_____

[10] The PCRA court stated Appellant did not file any direct appeal, and thus his judgment of sentence became final 30 days after he was sentenced. PCRA Ct. Op. at 5. As stated above, however, Appellant did file an appeal to this Court, as well as a petition for allowance of appeal to the Pennsylvania Supreme Court following this Court's affirmance.

A.3d at 1117. To invoke this exception, a "petitioner must establish that: (1) the facts upon which the claim was predicated were unknown; and (2) they could not have been ascertained by the exercise of due diligence." *Id.*; *see* 42 Pa.C.S. § 9545(b)(1)(ii). A claim invoking an exception to the time bar must be filed within one year of the date the claim could have been presented. 42 Pa.C.S. § 9545(b)(2). "Once it is established that the PCRA court has jurisdiction over the claim, the petitioner can present a substantive after-discovered evidence claim. *See* 42 Pa.C.S. § 9543(a)(2)(vi)." *Diggs*, 220 A.3d at 1117.

Here, the PCRA court determined Appellant's petition met the Section 9545(b)(1)(ii) newly discovered facts timeliness exception. The court found the Victim's recantation was "previously unknown to [Appellant] and could not have been ascertained earlier though the exercise of due diligence." PCRA Ct. Op. at 6. We agree. *See Diggs*, 220 A.3d at 1117. We thus now consider the PCRA court's dismissal of the petition on the merits.

We note:

> In order to obtain relief on a [Section 9543(a)(2)(vi)] substantive after-discovered evidence claim, a petitioner must demonstrate that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Diggs*, 220 A.3d at 1117.

The Pennsylvania Supreme Court

has repeatedly "acknowledged the limitations inherent in recantation testimony, which has been characterized as 'extremely unreliable.'" In fact, we have remarked that "[t]here is no less reliable form of proof, especially where it involves an admission of perjury." For that reason, we have emphasized that, when addressing an after-discovered evidence claim premised on recantation testimony, "the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." [*D'Amato*, 856 A.2d at 825.] "Unless the [PCRA] court is satisfied that the recantation is true, it should deny a new trial."

\* \* \*

Where appropriate, we have remanded matters involving after-discovered evidence claims and specifically directed . . . PCRA court to make credibility determinations on recantation testimony. For example, in [*Commonwealth v. Williams*, 732 A.2d 1167 (Pa. 1999)], the PCRA court failed to make an independent determination as to the credibility of the recanting witness. This Court noted the PCRA court, as fact-finder, "is in a superior position to make the initial assessment of the importance of [the recantation] testimony to the outcome of the case," and remanded with a direction for the PCRA court to "render its own, independent findings of fact and conclusions of law concerning [the recanting person's] credibility and the impact, if any, upon the truth-determining process which can be discerned from such testimony." [*Id.* at 1181.]

*Commonwealth v. Small*, 189 A.3d 961, 977-78 (Pa. 2018) (some citations omitted).

Additionally, our Supreme Court has stated:

This Court has made clear that, in cases where the PCRA court declined to hold a hearing, and where an assessment of witness testimony was essential to a petitioner's ineffectiveness claims, the PCRA court must make specific credibility determinations. When a PCRA hearing is held, and the PCRA court makes findings of fact, we expect the PCRA court to make necessary credibility determinations.

- 11 -

*Commonwealth v. Johnson*, 966 A.2d 523, 540 (Pa. 2009) (citations omitted). "Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone." *Id.* at 539.

As stated above, the PCRA court denied relief on the merits of Appellant's after-discovered evidence claim. It first found Appellant "is unable to demonstrate that [the Victim's] recantation letter will not be used solely to impeach a witness's [(Pace's)] credibility." PCRA Ct. Op. at 7; *see Diggs*, 220 A.3d at 1117. The court reasoned the Victim's "new version of events would directly contradict Pace's testimony that he committed the robbery with" Appellant. *Id.*

Second, the court concluded "[i]t is extremely unlikely that a jury would find [the Victim's] recantation to be credible in light of the overwhelming evidence of guilt presented at trial coupled with the dubious circumstances surrounding [the Victim's] sudden desire to recant after 18 years." PCRA Ct. Op. at 8. In support, the court cited: (1) Pace's admission of his own involvement in the robbery and description of Appellant's role as a co-conspirator; (2) the fact that "Pace has never recanted his testimony;" (3) the identification, made by Victim's cousin, of Pace as one of the robbers; (4) Appellant's presence "inside the house where [police] recovered [the Victim's] stolen personal items;" and (5) the Victim's positive identification of Appellant

shortly after the robbery. *Id.* at 7-8. The court also addressed the Victim's new "claim[ ] that he was secretly under the influence of Tylenol 3 at the time of the robbery" — the court noted the Victim had "admitted at trial that he was taking Tylenol 3 [but] it did not impair his ability to see and remember events." *Id.* at 8. Finally, the court questioned the Victim's alleged feelings of guilt as motivation to recant after 18 years. The court instead observed the Victim "is currently serving a life sentence" and "the more likely motive is that he is now housed with [Appellant] in the same prison." *Id.*

While the PCRA court properly considered the evidence adduced at trial, after careful review, we conclude the court's credibility assessment of the recantation letter, including its beliefs as to the Victim's reasons for recanting, are not supported by the record. *See Diggs*, 220 A.3d at 1116 (we will not disturb PCRA court's factual findings unless they have no support in the record). First, the PCRA court stated, "In his petition, [Appellant] states [the Victim], who is currently serving a life sentence, approached him in the prison yard[.]" PCRA Ct. Op. at 8. Neither the PCRA petition nor the Victim's affidavit, however, mentioned the term of the Victim's sentence.[11]

Furthermore, as Appellant points out, the PCRA judge did not preside over trial and has not observed the Victim or Pace testify. *See* Appellant's

---

[11] We note the court's opinion also, referred to "[p]rison records" that show the Victim "recently was transferred to the same prison where" Appellant is incarcerated. PCRA Ct. Op. at 8.

Brief at 27. We further note trial was conducted more than 21 years before the PCRA court's review of Appellant's petition. The court arrived at its factual findings without an evidentiary hearing or even oral argument, and instead, based its decision on only an examination of the PCRA petition. Pursuant to **Small**, **D'Amato**, and **Williams**, we conclude a fair review of Appellant's claim requires the PCRA court's "own, independent findings of fact and conclusions of law concerning [the Victim's] credibility and the impact, if any, upon the truth-determining process which can be discerned from such testimony." **See Small**, 189 A.3d at 978.

We observe that, upon an evidentiary hearing, the PCRA court may well arrive at the same findings of fact and conclusions of law, and accordingly deny relief on the merits again. We emphasize a recantation by a sole witness is to be assessed "in light of the evidence as a whole," which in this case, as the PCRA court pointed out, included Pace's testimony implicating Appellant, and the Victim's own trial testimony about the robbery, including his denial that the Tylenol 3 affected his lucidity.[12] **See Small**, 189 A.3d at 977.

_____

[12] The Commonwealth likewise cites, on appeal, "notable deficiencies" surrounding the Victim's recantation letter, including: (1) the lapse of 20 years since the robbery; (2) the "thorough[ ]" cross-examination of the Victim about his use of prescription Tylenol 3, and the Victim's testimony that the medication "caused only minor fatigue;" (3) the corroboration of the Victim's testimony by the testimony by Pace and the arresting detective; and (4) the recovery of the Victim's stolen items from the house where Appellant and his co-conspirators gathered following the robbery. Commonwealth's Brief at 14-15.

Nevertheless, we conclude that, in the absence of an evidentiary hearing and testimony, the PCRA court's present assessment of the credibility of the Victim and his recent recantation — based solely on a cold record review of the affidavit and Appellant's petition, 23 years after the jury trial concluded — was not complete. *See Johnson*, 966 A.2d at 540 ("[W]here an assessment of witness testimony was essential to a petitioner's . . . claims, the PCRA court must make specific credibility determinations.").

Accordingly, we vacate the order dismissing Appellant's petition and remand this case. The PCRA court shall first conduct a *Grazier* hearing to determine whether Appellant wishes to proceed *pro se* or with counsel, and to appoint counsel if Appellant is indigent and so desires. *See* Pa.R.Crim.P. 904(D) ("On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required . . . the judge shall appoint counsel to represent the defendant."). The court shall then conduct an evidentiary hearing and independently assess the credibility and significance of the Victim's recantation in light of the evidence as a whole. *See Small*, 189 A.3d at 977; *Johnson*, 966 A.2d at 540.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2021