J-S12027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY GAYNOR | : | |
| | : | |
| Appellant | : | No. 1726 EDA 2021 |

Appeal from the PCRA Order Entered August 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005932-2014

BEFORE:  BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                      **FILED JULY 15, 2022**

Corey Gaynor appeals from the denial of his Post-Conviction Relief Act
("PCRA") petition.  We affirm.

On April 14, 2014, at approximately 10:30 p.m., Timothy Cary
("Victim") and his paramour Laticia Samuels ("Samuels") went to the
Copabanana, a restaurant and bar located at 40th and Spruce Streets in
Philadelphia.   During the evening, Samuels and Timothy McElveen
("McElveen"), witnessed Victim involved in a verbal altercation with Appellant.
***See*** N.T. Jury Trial, 2/25/16, at 34-36; N.T. Jury Trial, 2/23/16, at 40.

Immediately following his argument with Victim, Appellant left the bar
and surrounding area.  Victim also stepped outside.  Samuels joined Victim
outside the bar after a few minutes.  Also on the street were McElveen and
Kareema Burton ("Burton"), who were talking to each other near where Victim
was standing.  ***See*** N.T. Jury Trial, 2/23/16, at 37-42, 99-102; N.T. Jury Trial,

2/24/16, at 11-18, 54, 62-64; N.T. Jury Trial 2/25/16, at 11, 31-36. Appellant returned to the immediate area of the bar and approached Victim. They engaged in a brief conversation before Victim looked at Appellant and said, "So what do you want to do?" N.T. Jury Trial, 2/25/16, at 37. Appellant did not reply. Instead, he took a step back, drew a handgun from his waistband, and shot Victim twelve times. Victim was transported to the hospital, where he was pronounced deceased at 1:42 a.m.

Following the shooting, Samuels, Burton, and McElveen watched Appellant walk southbound on 40th Street towards Pine Street. Samuels stayed with Victim and was present when officers of the Philadelphia Police Department responded to the scene. She provided the officers with a description of the shooter as a black male, light complexion, five feet eight inches tall, with shoulder length dreadlocks, wearing a gray jacket and dark pants. The description was broadcast over police radio along with information regarding the direction of Appellant's flight. Samuels then followed the vehicle transporting Victim to the hospital, where she met with different police officers and repeated her earlier description. *See* N.T. Jury Trial, 2/25/16, at 105, 107-08. Within minutes, Appellant was spotted on Pine Street, a short distance from the crime scene and in a location consistent with Samuels's description of the suspect's flight.

Meanwhile, McElveen took a picture of Appellant walking away from the shooting, ran to his own vehicle, and attempted to pursue Appellant. While officers were in the process of arresting Appellant, McElveen arrived on the

scene, jumped out of his vehicle, and spontaneously identified Appellant as the shooter by yelling: "That's the motherfucker that shot [Victim]. He needs to go to jail." *See* N.T. Jury Trial, 2/24/16, at 121. Officers at the hospital transported Samuels to the scene of Appellant's detention. As soon as Appellant was visible, Samuels screamed, "[T]hat's who did it, that's who shot my boyfriend." N.T. Jury Trial, 2/25/16, at 107. Burton was also able to "immediately" identify Appellant as "the shooter." *See* N.T. Jury Trial, 2/26/16, at 27.

After he made the spontaneous identification of Appellant, officers transported McElveen to the homicide unit to be interviewed. McElveen was hesitant to give a statement, explaining that he was concerned that a formal interview would be turned over to Appellant. N.T. Jury Trial, 2/26/16, at 37. However, he did turn over two photographs of the shooter to police. N.T. Jury Trial, 2/23/16, at 62; *see also* N.T. Jury Trial, 2/26/16, at 37, 39. The first was the one McElveen had taken as the shooter walked away. *See* N.T. Jury Trial, 2/26/16, at 39. Depicted in the photograph was the back of a person wearing a gray top and black pants with beyond shoulder length hair. *Id*. at 48. The second picture was recovered from McElveen after his interview had concluded and he was seated in the lobby. *Id*. at 50. McElveen approached the officers to show them a photograph that he procured from Instagram, which was posted by one of his friends approximately forty-five minutes prior to the shooting. *See* N.T. Jury Trial, 2/23/16, at 93-95. McElveen told police

that he recognized the man in the photo as the person who shot Victim. *Id*. at 67, 93.

After Appellant was arrested, police recovered a semi-automatic .45 caliber Glock firearm from a nearby walkway on Appellant's flight path from the crime scene. *See* N.T. Jury Trial, 2/24/16, at 129, 133-34. Forensic testing confirmed that the firearm was the murder weapon, since all the fired cartridge casings found at the scene were fired by that gun. *Id*. at 158, 169-71. The projectiles recovered from Victim's body also had markings consistent with having been fired by the firearm. *Id*. at 160-169. Gunshot residue was recovered from the sleeves of Appellant's gray sweatshirt. *See* N.T. Jury Trial 2/25/16, at 133-35. Appellant did not have a license to carry and the serial number on the firearm had been obliterated. *Id*. at 147-48, 158-60.

Police also recovered University of Pennsylvania video surveillance of a man fitting Appellant's description running northbound on 40th Street approximately fifteen minutes prior to the shooting. *See* N.T. Jury Trial, 2/24/16, at 13-14. The man entered a parked car on 41st Street, moved ten spaces, and re-parked the vehicle. *Id*. The man then exited the vehicle and walked eastbound on Spruce Street towards the Copabanana. *Id*. When the shooting happened minutes later, officers of the University of Pennsylvania Police Department determined that the vehicle was registered to Appellant and alerted Philadelphia police. *Id*. at 21, 53. Upon approaching the vehicle officers noticed that the center console was open, which was consistent with

the eyewitnesses' stories about Appellant briefly leaving the Copabanana, before returning with a firearm. *Id*. at 54-55.

One week before trial, McElveen met with a Philadelphia police officer and the prosecutor. *See* N.T. Jury Trial, 2/26/16, at 28-29. During the meeting, McElveen stated that "word was out on streets that he is a snitch" and expressed fear of people that would be attending Appellant's trial. *Id*. at 29. McElveen informed the Commonwealth representatives that he would not voluntarily testify at Appellant's trial. *Id*. After the meeting, the Commonwealth secured a bench warrant to compel McElveen's attendance and participation. N.T. Jury Trial, 2/23/16, at 45.

On February 23, 2016, Appellant proceeded to a jury trial. Therein, Samuels reaffirmed her earlier identification of Appellant. *See* N.T. Jury Trial, 2/25/16, at 37-39, 42, 44, 69. However, Burton declined to explicitly identify Appellant as the shooter. Instead, she stated that Appellant was standing right next to her before the shooting and that the shooting happened right next to her, but asserted that she did not witness it. *See* N.T. Jury Trial 2/23/16, at 103, 115, 117-21. McElveen also initially failed to make an in-court identification of Appellant, testifying that Appellant looked like the shooter but that he was too intoxicated during the shooting to make a valid identification. *Id*. at 39, 45. However, on redirect examination he conceded that he "knew what he was doing" when he unequivocally identified Appellant as the shooter but was afraid of testifying and "being labeled a snitch." *Id*. at 46, 50. At the conclusion of the trial, Appellant was convicted of first-

degree murder, carrying a firearm without a license, and possession of an instrument of crime.

The trial court sentenced Appellant to serve life in prison without the possibility of parole for his first-degree murder conviction. No further penalty was imposed on the remaining counts. Appellant filed a post-sentence motion that was denied by operation of law. On direct appeal, Appellant raised a due process challenge to the trial court's first-degree murder jury instruction. However, since trial counsel failed to lodge a specific objection to the charge when it was read to the jury, we found the issue was waived and affirmed Appellant's judgment of sentence. *See Commonwealth v. Gaynor*, 179 A.3d 574 (Pa.Super. 2017) (unpublished memorandum at *2). Alternatively, we held that, if the claim had been properly preserved it still would have failed because it was meritless. *Id*. at *2 n. 5. Appellant submitted a petition for allowance of appeal to our Supreme Court, which was denied.[1] *See Commonwealth v. Gaynor*, 654 Pa. 141 (Pa. 2019).

On October 4, 2019, Appellant filed the timely PCRA petition that is the subject of this appeal. Appointed counsel submitted an amended petition, alleging multiple claims of trial counsel ineffectiveness. After issuing Pa.R.Crim.P. 907 notice, the PCRA court dismissed the petition without a hearing. This timely appeal followed.

Appellant raises the following issues for our review:

---

[1] Appellant filed his petition for allowance of appeal *nunc pro tunc* following a PCRA proceeding wherein his appellate rights were reinstated.

I.     Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [§] 9 of the Pennsylvania Constitution when trial counsel ineffectively failed to timely object and/or renew his objection to an unconstitutional jury instruction thereby waiving it and precluding appellate review?

II.    Was Appellant denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, [§] 9 of the Pennsylvania Constitution when trial counsel ineffectively failed to file a pre-trial motion to suppress the initial identification of Appellant by McElveen and Burton, did not object to the in-court identification by McElveen and then failed to request that the jury be given a [charge pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954)]?

III.   Was Appellant denied his rights under Article 1 § 9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to object to the prosecutor's questioning of McElveen and comments during closing argument that McElveen feared testifying when there was no evidence of record of any nexus between those fears and the Appellant?

IV.   Was Appellant denied his rights under Article 1 § 9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth and Fourteenth Amendments to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to move to suppress and/or object to introduction of a photograph taken by an unidentified person who was not called to testify at the trial, violating Appellant's rights under the Confrontation Clause?

Appellant's brief at 3-4.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record

and is free of legal error." ***Commonwealth v. Diggs***, 220 A.3d 1112, 1116 (Pa.Super. 2019). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." ***Id***. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Id***. "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (citing ***Commonwealth v. Miner***, 44 A.3d 684, 688 (Pa.Super. 2012)).

All of Appellant's arguments raise allegations of trial counsel ineffectiveness. Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. ***See Commonwealth v. Becker***, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. ***Id***. The failure to establish any of the three prongs is fatal to the claim. ***Id***. at 113.

## I. First Degree Murder Jury Instruction

In his first claim Appellant argues that trial counsel was ineffective when he failed to object to an unconstitutional jury instruction. ***See*** Appellant's brief at 12. To assess the merits of the underlying claim, we review the trial court's jury instruction as follows:

[T]he reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher*, 986 A.2d 759, 762 (Pa. 2009) (citations and quotations omitted).

At issue in the case *sub judice* is the following jury instruction:

If you find that the defendant used a firearm in committing the acts that are charged in this case, which is murder, and that the defendant did not have a license to carry that firearm as required by law, you **may** regard that as one of the items of circumstantial evidence on the issue of whether the defendant intended to commit the crime of murder as is charged in this case. It is for you to determine what weight, if any, you will give to that item of circumstantial evidence. Evidence of non-licensure alone is **not** sufficient to prove that the defendant intended to commit the offense of murder.

N.T. Jury Trial, 2/26/16, at 87 (emphases added). This instruction was drawn directly from a standard jury instruction based on 18 Pa.C.S. § 6104, which provides as follows:

In the trial of a person for committing or attempting to commit a crime enumerated in section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense.

*See also* Pa. SSJI (Crim) 15.6104. Murder is one of the crimes enumerated in § 6105. *See* 18 Pa.C.S. § 6105(b).

- 9 -

Appellant alleges that the jury instruction violated his due process rights. Our Supreme Court has held that an instruction based on § 6104 violates due process "when it form[s], **by itself**, the mandatory basis of a mandatory presumption of intent." ***Commonwealth v. Kelly***, 724 A.2d 909, 913 (Pa. 1999) (emphasis in original). However, instructions that create a permissive inference of intent have been upheld. ***See Commonwealth v. Hall***, 830 A.2d 537, 549-50 (Pa. 2003). This is because a permissive inference leaves the fact-finder free to accept or reject the inference. ***Id***. at 547-48. Accordingly, due process is only implicated in those permissive inference circumstances where, "under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference." ***Id***. at 546.

Here, the PCRA court properly found that the relevant instruction was permissive. ***See*** PCRA Court Opinion, 10/22/21, at 5-6. The trial court did not instruct the jury that it was required to view the use of an unlicensed firearm as evidence of Appellant's intent to commit homicide. Rather, the trial court advised the jury that, **if** they found Appellant used a firearm in the commission of the murder, then they **could** regard that fact as an item of circumstantial evidence supporting an inference that Appellant intended to commit the crime. ***See*** N.T. Jury Trial, 2/26/16, at 87. The trial court also cautioned the jury that evidence of Appellant's non-licensure, alone, would be insufficient to prove such intent. ***Id***. Accordingly, we agree that the trial court

issued a permissive instruction and, therefore, Appellant's due process claim turns upon whether, "under the facts of the case, there [was] no rational way the trier [of fact] could make the connection permitted by the inference." *Hall*, *supra* at 546.

Appellant contends that the permissive inference was unconstitutional because there was "absolutely no evidence linking [him] to the gun." Appellant's brief at 16. In support of his position, Appellant points out that the gun was not recovered upon his person and that no fingerprints or DNA linked the weapon to him. *Id*. at 16-17. In contrast, the Commonwealth and PCRA court found ample circumstantial support for the inference that Appellant possessed the unlicensed firearm and did so with the specific intent to kill the victim. *See* Commonwealth's brief at 13. We agree with the Commonwealth and PCRA court that Appellant has failed to establish that the facts of this case did not support such an inference.

Here, as in *Hall*, Appellant "was not simply detected in possession of an unlicensed firearm; he was caught in the act of firing it at another man." *Hall*, *supra* at 549. Prior to the crime, the video evidence showed Appellant running to, entering, and hurriedly re-parking his vehicle before returning to the scene of the murder within minutes of the shooting. *See* N.T. Jury Trial, 2/24/16, at 13-14, 20-21. This suspicious movement, along with the fact that he left the center console open, was consistent with the Commonwealth's theory that Appellant hid an unlicensed firearm in his car which he then

retrieved to kill Victim. *Id*. at 54-55. After the shooting, multiple eyewitnesses identified Appellant as the perpetrator who fired multiple shots that struck Victim's vital organs, including his heart. N.T. Jury Trial, 2/23/16, at 44-45, 48-49, 52, 102-04, 121; *see also* N.T. Jury Trial, 2/25/16, at 37, 41-42. Furthermore, after Victim fell to the ground, eyewitnesses observed Appellant step over him and continue firing directly into Victim's body. *See* N.T. Jury Trial, 2/25/16, at 37. While the firearm was not located on Appellant's person, it was discovered along Appellant's flight path and forensically linked to the recovered casings and bullet fragments. *See* N.T. Jury Trial, 2/23/16, at 129, 140, 152; *see also* N.T. Jury Trial, 2/24/16, at 129-30, 158, 160-71. Forensic testing also revealed gunpowder residue on Appellant's sleeves. *See also* N.T. Jury Trial, 2/25/16, at 133-35.

Based upon this evidence, the jury could reasonably infer that Appellant possessed a firearm and shot it at Victim with the intent to kill him. Since the trial court gave a permissive inference instruction that was rationally connected to the evidence, Appellant's argument is meritless. Accordingly, trial counsel was not ineffective for failing to assert a meritless objection and no relief is due on Appellant's first claim.

## II. Eyewitness Identification

In his second issue, Appellant alleges that trial counsel was ineffective when he failed to seek pretrial suppression of the out-of-court identifications of Appellant by McElveen and Burton as unduly suggestive. *See* Appellant's

brief at 21. Further, Appellant contends that trial counsel was also ineffective for failing to object to McElveen's in-court identification of Appellant. *Id*. at 23. Alternatively, Appellant suggests that counsel was ineffective for failing to request a *Kloiber* instruction regarding the poor lighting conditions.[2] *Id*.

In evaluating whether an out-of-court identification should be suppressed, the suggestiveness of the underlying identification procedure is but one factor to be considered. Overall, "the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa.Super. 2003). As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "(1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of his prior description of the perpetrator at the confrontation; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation." *Commonwealth v. Milburn*, 191 A.3d 891, 899-900 (Pa.Super. 2018) (citing *Moye*, *supra*). The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Commonwealth v. Wade*, 33 A.3d 108, 114 (Pa.Super. 2011).

---

[2] A *Kloiber* instruction advises the jury that witnesses sometimes make mistakes in identification, and that, if certain factors are present, the accuracy of the identification is so doubtful that a jury must receive it with caution. *See Commonwealth v. Kloiber*, 106 A.2d 820, 826-27 (Pa. 1954).

Absent some special element of unfairness, a prompt "one[-]on[-]one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Id*. Indeed, "we have regularly held that a prompt one-on-one identification enhances the reliability of the identification." ***Commonwealth v. Hale***, 85 A.3d 570, 574 (Pa.Super. 2014) (affirming denial of suppression where the defendant was handcuffed and police asked the victim to identify defendant as the perpetrator, because the victim had a sufficient opportunity to view the defendant and the period between the crime and her identification was brief); ***see also Commonwealth v. Armstrong***, 74 A.3d 228, 239 (Pa.Super. 2013) (affirming conviction where the police asked the victim to make a one-on-one identification of a handcuffed defendant less than ten minutes post-attempted break-in, after police picked up the defendant "running" through victim's apartment complex). Accordingly, an out-of-court identification should only be suppressed where "the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." ***Commonwealth v. Kendricks***, 30 A.3d 499, 504 (Pa.Super. 2011).

Appellant alleges that Burton's identification procedure was unduly suggestive because it was one-on-one: Appellant was handcuffed and officers asked Burton to identify him. Also, Burton later recanted portions of her initial statement, testifying at trial that she did not see a gun or the shooting. ***See***

Appellant's brief at 23-24. The PCRA court declined to find counsel was ineffective concluding that the out-of-court identification was admissible. ***See*** PCRA Court Opinion, 10/22/21 at 7. We agree with the PCRA court that the substantive claim lacks merit.

Considering the totality of the circumstances surrounding Burton's identification, we conclude that any corrupting effect of the handcuffs and officer suggestion were outweighed by the other indicia of reliability. Prior to the shooting, Burton had sufficient time to view Appellant outside the bar since she was standing right next to him and the area was well-illuminated from the bar lights. ***See*** N.T. Jury Trial, 2/23/16, at 119-20, 130. Minutes after the shooting, Burton "immediately" identified Appellant as the shooter to the police, exclaiming "we was standing right there and we could've been killed." N.T. Jury Trial, 2/26/16, at 15-16, 27. Accordingly, Burton's identification was similar to those this Court upheld in ***Hale*** and ***Armstrong***, rendering this aspect of Appellant's second ineffectiveness claim devoid of arguable merit. Therefore, trial counsel was not ineffective for failing to file a pretrial motion to suppress Burton's identification of Appellant.

We also agree with the PCRA court that Appellant's challenge concerning McElveen's out-of-court identification is meritless. Prior to the shooting, McElveen had ample time to observe Appellant inside and outside the bar. ***See*** N.T. Jury Trial, 2/23/16, at 39-40. Afterwards, McElveen took a picture of Appellant and pursued him as he fled. ***Id***. at 61-62. McElveen eventually

caught up with Appellant while he was being detained by the police, volunteering to the arresting officers that Appellant was indeed the perpetrator they sought. *Id*. at 62-63. McElveen's confident identification was not prompted by the police. *Id*. at 63. Accordingly, a suppression motion challenging this identification would also have been unsuccessful.

Appellant also relies on certain inconsistencies between McElveen's initial on-scene statements and his trial testimony to allege that the identification should have been suppressed. *See* Appellant's brief at 25-26. However, trial counsel would have had no reason to anticipate that McElveen would revise his pre-trial version of events at trial and there is no guarantee he would have done so at a pre-trial suppression hearing. Thus, trial counsel was not ineffective for failing to challenge the admissibility of McElveen's identification of Appellant and no relief is due.[3]

In his final sub-claim, Appellant argues that trial counsel was ineffective for failing to request a ***Kloiber*** charge with respect to these identifications. *See* Appellant's brief at 31. It is well-established that a ***Kloiber*** charge is only appropriate when the accuracy of the testimony of an eyewitness's

---

[3] Since we find that the out-of-court identification was not unduly suggestive, it is not necessary to determine whether McElveen's subsequent in-court identification had an independent basis to support admissibility. ***See Commonwealth v. DeJesus***, 860 A.2d 102, 113 (Pa. 2004) (explaining that where an appellant fails to establish that an out-of-court identification was impermissibly tainted, it is not necessary for the reviewing court to address the derivative assertion that an in-court identification should have been suppressed).

identification is "so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." **Kloiber**, **supra** at 826-27; **see also Commonwealth v. Rios**, 920 A.2d 790, 804 (Pa. 2007). Specifically, a trial judge must provide the instruction "where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." **Commonwealth v. Ali**, 10 A.3d 282, 303 (Pa. 2010). A **Kloiber** charge is not appropriate where an eyewitness had "protracted and unobstructed views" of the defendant and consistently identified the defendant "throughout the investigation and at trial." **Id**.; **see also Commonwealth v. Upshur**, 764 A.2d 69, 77 (Pa.Super. 2000).

First, Appellant alleges that the **Kloiber** instruction was required because McElveen was intoxicated. **See** Appellant's brief at 30-31. The PCRA court held that the claim was meritless because other evidence corroborated McElveen's identification. **See** PCRA Court Opinion, 10/22/21, at 10. Meanwhile, the Commonwealth contends that there was no basis for counsel to request a **Kloiber** charge as to McElveen, since intoxication does not warrant a **Kloiber** instruction. **See** Commonwealth's Brief at 18-19. We agree with the Commonwealth. **See Commonwealth v. Dozier**, 208 A.3d 1101, 1103 (Pa.Super. 2019) ("[W]e may affirm a PCRA court's decision on any grounds if the record supports it.").

It is well-established that an eyewitness's level of intoxication relates to the credibility of their testimony, not their actual physical ability to observe the perpetrator from their respective position. ***See, e.g.***, ***Commonwealth v. Reid***, 99 A.3d 427, 449 (Pa. 2014) ("[T]he need for a ***Kloiber*** charge focuses on the **ability** of a witness to identify the defendant." (emphasis in original)). Accordingly, McElveen's testimony about his level of intoxication did not warrant a ***Kloiber*** charge and trial counsel was not ineffective for failing to request one on that basis. ***See Commonwealth v. Paolello***, 665 A.2d 439, 455 (Pa. 1995) (finding counsel was not ineffective for failing to request a ***Kloiber*** charge where the eyewitnesses were intoxicated).

Appellant also avers that trial counsel should have requested a ***Kloiber*** charge because Burton testified that she did not see the shooting and did not identify Appellant as the shooter at trial. ***See*** Appellant's brief at 30-33. Since this testimony contradicted her initial statement to police in which she did positively identify Appellant as the shooter, Appellant argues that a ***Kloiber*** instruction was warranted. ***Id***. We disagree.

Since Burton did not actually identify Appellant as the shooter in court, a ***Kloiber*** instruction was unnecessary. ***See Commonwealth v. Sanders***, 42 A.3d 325, 335 (Pa.Super. 2012). The facts in ***Sanders*** are similar to the facts herein. In ***Sanders***, a shooting victim identified the defendant as the shooter twice, in a photo array and a written statement. However, at trial the victim did not identify the defendant and stated that he could not recall making

a prior identification. The defendant requested a *Kloiber* instruction, but his request was denied. On appeal, we agreed with the trial court, finding that "[u]nlike the typical *Kloiber* situation, where there is a damaging in-court identification of the accused, the same type of concerns [were] not present where a witness decline[d] to identify the defendant in court." *Id*. Thus, as in *Sanders*, Appellant's claim that trial counsel was ineffective due to his failure to request a *Kloiber* instruction pertaining to Burton had no merit, because the circumstances that warrant a *Kloiber* charge were not present.

## III. Direct Examination of McElveen and Closing Argument

In his third PCRA claim, Appellant argues that trial counsel was ineffective when he failed to object to the prosecutor improperly questioning McElveen and making inflammatory remarks in her closing argument. *See* Appellant's brief at 36. We consider each argument in turn.

Appellant's first sub-claim of this issue refers to the portion of McElveen's direct examination in which the jury learned that the Commonwealth obtained a warrant to secure McElveen's presence at trial. The warrant was necessitated after McElveen told the prosecutor that he would not voluntarily appear at Appellant's trial because people had approached him in the neighborhood and he was afraid of being branded a "snitch." *See* N.T. Jury Trial, 2/23/16, at 45-46, 67-68. The PCRA court held that this claim was meritless because Appellant "failed to prove that any of these questions asked by the prosecution were based on lies or any untrue information." *See* PCRA

Court Opinion, 10/22/21, at 11. The Commonwealth contends that this line of questioning was permissible to explain inconsistencies between McElveen's trial testimony and prior statements. **See** Commonwealth's brief at 21. We agree with the Commonwealth. **See Dozier**, **supra** at 1103 (reiterating the principle that we may affirm a PCRA court's decision on any grounds if the record supports it). Our Supreme Court has held that a prosecutor's questioning of a witness concerning his fear of testifying is permissible to explain a witness's motive to testify untruthfully. **See Commonwealth v. Collins**, 702 A.2d 540, 544 (Pa. 1997) (recognizing well-established precedent in Pennsylvania that third-party threats are admissible to explain a witness's prior inconsistent statement). Accordingly, Appellant's first sub-claim lacks merit and the PCRA court properly denied it.

Next, Appellant argues that trial counsel was ineffective when he failed to object to prosecutorial misconduct in closing argument. **See** Appellant's brief at 40. The legal standard for an ineffectiveness claim arising out of an allegation of prosecutorial misconduct is as follows:

> A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made. . . .
>
> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial:
>
>> Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and

form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Commonwealth v. Hairston*, 249 A.3d 1046, 1067 (Pa. 2021) (quoting *Commonwealth v. Chmiel*, 30 A.3d 1111, 1181-82 (Pa. 2011)) (internal citations omitted).

Appellant contends that the prosecutor's comments regarding McElveen's fear of testifying should have been inadmissible because they were not supported by the evidence. *See* Appellant's brief at 41. However, the PCRA court found that the Commonwealth's closing remarks constituted a fair response to trial counsel's closing argument. *See* PCRA Court Opinion, 10/22/21, at 13. We agree.

The record reflects that trial counsel attacked the credibility of McElveen in his closing remarks, including his fear of testifying as follows:

> What did McElveen tell you? Let's get to this right away about being afraid. Did this guy look afraid to you[? H]e didn't look like it to me. Again, you're the fact-finders. You could tell by his manner of testifying he ain't afraid of nobody. He wasn't afraid of anything.

N.T. Jury Trial, 2/26/16, at 12. In response, the prosecutor argued:

> Now, Counsel says we know what kind of guy Tim McElveen is. He's rough. He uses bad language. You know, Tim McElveen – I don't know what – he's under pressure – he's under pressure. He lives in the neighborhood. He says to you quite honestly it's not good to be seen as a snitch. He told [Detective John Harkins] that he was fearful about the safety of his mother; safety of his

family and himself.[4]  He knows that he's a snitch, but he lives in that neighborhood and that's where he has to stay; that's where he likes it.

So, he tells you that he has reservations.  That even when he spoke to the police he said, "I thought I was doing what I had to do when I pointed him out and I would be done."

You can say what you want about Tim McElveen.  Counsel can s[n]e[e]r at the way he addresses you or the way he speaks, but Tim McElveen would in another era had [sic] been a hero.

He would have been a hero the night [Victim] was murdered, and you can't take that away from him.  No matter what happens to him, if he succumbs to pressures now; that he doesn't want to testify consistently to what he saw because he's scared.

. . . .

Now, unfortunately the pressures of life in the last two years have gotten to a point where he's scared.  He's scared to come here. He looks, you know, Counsel is looking at him, and it doesn't look like he's afraid of anything, and he doesn't.  He says, "How does he know who's going to be in the courtroom?  Why would he be afraid to come to the 8th floor?"

Well, he's not stupid.  He knows there are people that are going to be in the courtroom.  He knows that there are relatives of people.  He knows that people are all going to be here and they're going to know people – they're going to know that he, Tim McElveen, appeared in a homicide case and gave evidence for the Commonwealth, and he's afraid what that's going to mean when he goes back home.  What it's going to be for people he knew,

_____

[4] At trial, Detective Harkins testified that he interviewed McElveen at 3:35 a.m. on April 15, 2014.  *See* N.T. Jury Trial, 2/26/16, at 35.  At the beginning of the interview, McElveen indicated that he did not understand why he needed to be involved further since he had already made an identification and told the police what happened on scene.  *Id*. at 37.  McElveen also expressed concern about giving a formal statement because it would be turned over to Appellant. *Id*. at 37.

they know, or related to them; whether their safety is going to be challenged.

N.T. Jury Trial, 2/26/16, at 17-22.

Since the at-issue remarks were made in fair response to trial counsel's argument, no misconduct occurred, and Appellant's underlying claim of prosecutorial misconduct is baseless. Furthermore, Appellant was not prejudiced since the trial court instructed the jury that the arguments of counsel were not evidence, and the jury is presumed to have followed the court's instruction. **See** N.T. Jury Trial, 2/26/16, at 92; **see also Commonwealth v. Tedford**, 960 A.2d 1, 37 (Pa. 2008). Since the underlying claim lacks merit, the PCRA court did not err in dismissing the derivative ineffective assistance of counsel claim.

## IV. Admission of Photograph

Finally, Appellant attacks trial counsel's effectiveness for failing to object when the Commonwealth sought to introduce a photograph that was taken and posted to Instagram by a person who did not testify. **See** Appellant's brief at 45. Appellant alleges that absent testimony from the photographer, Kareema,[5] this admission violated his Sixth Amendment right to confront

---

[5] Kareema's last name was not revealed at trial. However, McElveen did specify that this was a different Kareema than Kareema Burton, who testified at trial and was present for the shooting. **See** N.T. Jury Trial, 2/23/16, at 94-95.

adverse witnesses because it implied that an absent witness had important information about the shooting. *Id*. at 46.

The PCRA court found the claim was meritless since McElveen did not testify that Kareema told him anything that could be considered a testimonial statement, Appellant's allegation that Kareema had information about Appellant's involvement in the crime was "mere speculation," and the "court was unable to locate any legal authority that has held that a photograph, in and of itself, [was] testimonial in nature." *See* PCRA court opinion, 10/22/21, at 17. Furthermore, the PCRA court found that Appellant suffered no prejudice from the absence of Kareema's testimony, since she was not the one who provided the police with the photo or described the man depicted as the shooter. *Id*. at 18. We agree with the PCRA court.

Whether a defendant has been denied his right to confront a witness is a question of law for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Brown*, 185 A.3d 316, 409 (Pa. 2018) (plurality). The Confrontation Clause of the Sixth Amendment prohibits out-of-court testimonial statements by a witness, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *See Crawford v. Washington*, 541 U.S. 36 (2004). Thus, the threshold question is whether the at-issue evidence constituted a testimonial statement.

In analyzing whether a statement is testimonial, and, therefore, subject to the protections of the Confrontation Clause under *Crawford*, a court must determine whether the primary purpose of the evidence was to establish or prove past events relevant to a later criminal prosecution. *See Commonwealth v. Allhouse*, 36 A.3d 163, 175 (Pa. 2012). Our courts have described the class of testimonial evidence covered by the Confrontation Clause as:

> *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Commonwealth v. Dyarman*, 73 A.3d 565, 568 (Pa. 2013) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-10 (2009)). Accordingly, our courts have generally construed testimonial evidence as a written or oral statement. *Id*. Appellant has not provided a case where a photograph was considered a testimonial statement and we have not been able to locate one. *See*, *e.g. Brown*, *supra* at 331 (upholding testimony by medical examiner who did not conduct the autopsy because the doctor's opinion relied on autopsy photographs, which were non-testimonial).

Based on our review of the record, we find that the photograph was non-testimonial since the evidence did not reveal that the image was captured in

anticipation of trial or for the purpose of proving Appellant committed the shooting. Instead, trial testimony revealed that Kareema posted the photograph to Instagram forty-five minutes prior to the shooting. *See* N.T. Jury Trial, 2/26/16, at 50. The image depicted a man and a woman standing side-by-side and was captioned "look who grew up." *See* Commonwealth Exhibit 49. While trial testimony did not reveal any information regarding the circumstances surrounding where or when the image was captured, McElveen testified that he did not see Kareema at the Copabanana or outside the bar on the night of the shooting. *See* N.T. Jury Trial, 2/23/16, at 93-95. McElveen testified that, although his friend Kareema sent him the posting through Instagram, McElveen was the one who provided it to the police and identified the man depicted as the person who shot Victim. *See* N.T. Jury Trial, 2/23/16, at 93-95. Accordingly, the testimonial statement was made by McElveen, not Kareema.

To the extent that the fact that Kareema sent McElveen the photograph could be considered a testimonial statement, no relief would be due. As the PCRA court aptly pointed out, the photograph was merely cumulative evidence that corroborated the earlier on-scene identifications of Appellant by McElveen, Burton, and Samuels. *See* PCRA Court Opinion, 10/22/21, at 18. Accordingly, Appellant was not prejudiced by the admission of the photograph and the PCRA court did not err when it denied relief on Appellant's final issue.

**V.    Conclusion**

For the foregoing reasons, Appellant has failed to convince us that the PCRA court erred in denying his PCRA petition and that relief is due. Consequently, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2022